[Cite as *In re C.E.*, 2021-Ohio-3916.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| IN RE: C.E. | : | APPEAL NO. C-210407<br>TRIAL NO. F13-1048Z |
| | : | |
| | : | *O P I N I O N.* |


Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 3, 2021


*Christopher P. Kapsal,* for Appellant Mother,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Patsy Bradbury*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Robert Adam Hardin*, Assistant Public Defender, for Appellee Guardian ad Litem.

**MYERS, Presiding Judge.**

{¶1} Mother appeals the Hamilton County Juvenile Court's judgment granting permanent custody of her child to the Hamilton County Department of Job and Family Services ("HCJFS"). The child's guardian ad litem ("GAL") and HCJFS ask this court to affirm the juvenile court's judgment.

*I. Background and Procedural History*

{¶2} HCJFS became involved with mother's children in 2013, but mother had previous involvement with child protective services in two different states. In May 2000, the Illinois Department of Children and Family Services became involved with mother after her three-week-old child died as a result of cosleeping with mother. The death was ruled an accident, and the case was closed after mother refused services offered to her by the agency.

{¶3} In 2008, an Iowa court terminated mother's parental rights to three of her children due to mother's history of domestic violence, substance abuse, mental-health issues and her resistance to services. In 2009, mother gave birth to I.E.-J., and in 2010, the Iowa Department of Children Services temporarily removed the child from mother's care because of drugs found in the home. I.E.-J. was returned to mother with orders of protective supervision. The case was closed, and mother and I.E.-J. moved to Ohio.

{¶4} Mother gave birth to C.E., the subject of this appeal, in July 2016. When C.E. was three months old, HCJFS obtained interim custody of him and I.E.-J., after C.E. was found unresponsive in mother's home. Mother reported that she had swaddled C.E. and left him on his back on a bed. When she returned to the room, she said C.E. was face down on the bed with a bloody nose. C.E. was taken by ambulance to Cincinnati Children's Hospital Medical Center ("CCHMC"), where he

was diagnosed with a catastrophic brain injury, with no medical hope of improvement.

{¶5} In April 2017, the juvenile court adjudicated the children dependent. Although the court remanded custody to mother with orders of protective supervision, C.E. remained in CCHMC. Under the protective orders, mother was to provide HCJFS and the children's GAL access to her home and to C.E.'s medical information, and was to comply with random drug screens.

{¶6} In October 2017, HCJFS filed a complaint requesting permanent custody of both children. With respect to C.E., HCJFS alleged that mother failed to allow access to his medical records and refused to allow him to be released to a long-term care facility, even though he had been ready for discharge from a hospital setting for several months. In November 2017, the agency amended its complaint to include an allegation that mother had been arrested for driving under the influence. I.E.-J. was placed in the interim custody of HCJFS, and C.E. remained at CCHMC in mother's legal custody.

{¶7} In February 2018, interim custody of C.E. was awarded to HCJFS. The magistrate found that, although C.E. had been prepared for discharge from CCHMC since July 2017, he still needed significant medical care that mother was not able to provide. The magistrate found that mother had not completed the necessary medical training and that the hospital had not been able to arrange back-up nursing care for mother's residence due to safety concerns.

{¶8} In March 2018, HCJFS sought an emergency amendment to C.E.'s case plan because mother refused to consent to a surgery deemed medically necessary by C.E.'s medical team. In a letter to the court, one of C.E.'s doctors described C.E. as "neurologically devastated," noting that the child is ventilator

3

dependent and receives nutrition via a gastronomy tube. The doctor explained that C.E. has a condition in which his eyelids do not shut on their own, leaving the eyes open to external irritants and at risk for ulcerations to the corneas due to exposure. The ulcerations could be sources of pain and infection and put C.E. at risk for further complications. The doctor recommended a surgical procedure to close the eyelids to eliminate the risk of exposure damage and its associated complications, and indicated that the procedure was reversible. The court approved the case-plan amendment, and C.E. had the surgery.

{¶9}  In September 2018, the magistrate denied HCJFS's motion for permanent custody of the children. With respect to C.E., the magistrate noted that C.E. could not be returned to mother because she was unable to provide the significant medical care that he required. In addition, the magistrate noted that C.E. had been successfully transferred to St. Joseph's Infant home, a long-term-care nursing facility. Temporary custody of C.E. was awarded to HCJFS.

{¶10}  In December 2018, the juvenile court sustained HCJFS's objections to the magistrate's decision, and awarded permanent custody of I.E.-J. to HCJFS. The court adopted that part of the magistrate's decision denying HCJFS's motion for permanent custody of C.E., but its entry contained language committing both children to the permanent custody of HCJFS. Mother appealed.

{¶11}  In the appeal numbered C-190007, this court reversed the award of permanent custody of C.E. to HCJFS, and held that, to the extent that the juvenile court's award of permanent custody of C.E. was simply a clerical error, the matter was remanded to the juvenile court to correct the error. *In re: E.-J. Children*, 1st Dist. Hamilton No. C-190007, 2019-Ohio-1519, ¶ 22. This court affirmed the award of permanent custody of I.E.-J. to HCJFS. *Id.* at ¶ 36.

{¶12} On remand, the juvenile court clarified that its award of permanent custody had been a clerical error and amended its December 2018 judgment entry to reflect a grant of temporary custody of C.E. to HCJFS.

{¶13} HCJFS subsequently filed a motion to modify temporary custody to permanent custody as to C.E. At trial, evidence demonstrated that C.E. has complex medical needs due to the extent of his permanent brain damage. He requires gastronomy-tube feeding, numerous medications, and remains on a ventilator. He is nonambulatory, has no more than reflexive movements, and it is difficult for medical staff to recognize if he is awake or asleep. He requires therapy to maintain range of motion, as well as visits from multiple specialty care providers.

{¶14} The HCJFS caseworker testified that mother refused to engage in substance-abuse and mental-health treatment services, and did not complete the training necessary to provide the medical care that C.E. would need if he were to live in her home. Although mother would be eligible for home health care for C.E., it could not be provided in her home due to safety concerns in her area. The caseworker testified that mother refused to cooperate with agency efforts to relocate her to an area where she could receive assistance in her home.

{¶15} The caseworker described mother's visits with C.E. as "spotty," noting that she did not visit him between May and December 2019. He said that it was HCJFS's position that it was in C.E.'s best interest to remain at the nursing facility due to the quality of specialized care that he receives there. He testified that if the court granted permanent custody of C.E. to HCJFS, both the agency and the nursing facility would continue to accommodate mother's visits with C.E.

{¶16} Although mother testified that she was willing to relocate to care for C.E. in her own home, she admitted that she had known for several years that she

would have to relocate because home health care nurses could not travel to her current home due to safety concerns. She denied that she refused to complete services, and testified that she completed the necessary medical training to have C.E. in her home. This was belied by the other evidence.

{¶17} Mother also testified that she was satisfied with the level of care that C.E. was receiving at the nursing facility. She said that if C.E. were placed in her custody, she would allow him to remain at the nursing facility if C.E.'s doctors recommended it. She testified that she understood that, even if HCJFS obtained permanent custody, she would be able to continue to have contact with C.E., and said that she would continue to have contact with him.

{¶18} Following the trial, the magistrate granted HCJFS's motion for permanent custody. The juvenile court overruled mother's objections to the magistrate's decision and awarded permanent custody of C.E. to HCJFS. This appeal followed.

## II. Due-Process Challenge

{¶19} In her first assignment of error, mother argues that the juvenile court erred in applying R.C. 2151.414(B) and (D), asserting that the statutory provisions are an unconstitutional violation of due process, as applied to her. She acknowledges that her failure to raise a constitutional challenge in the trial court waived the issue and that the issue need not be considered for the first time on appeal. *See State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus. We decline mother's invitation to consider the constitutional challenge, and we overrule the first assignment of error.

### III. Weight and Sufficiency

{¶20} In her second assignment of error, mother argues that the juvenile court erred in finding that permanent custody was in C.E.'s best interest because the finding was against the manifest weight of the evidence and was not supported by sufficient evidence.

{¶21} A juvenile court's determination on a permanent-custody motion must be supported by clear and convincing evidence. *In re B.J.*, 1st Dist. Hamilton Nos. C-200372 and C-200376, 2021-Ohio-373, ¶ 14. Clear and convincing evidence is evidence sufficient to "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42. We must examine the record and determine if the juvenile court had sufficient evidence before it to satisfy the clear-and-convincing standard. *In re B.J.* at ¶ 14. In reviewing a challenge to the weight of the evidence, we review the record to determine if the juvenile court lost its way and created such a manifest miscarriage of justice in resolving conflicts in the evidence that its judgment must be reversed. *Id.*

{¶22} A juvenile court may grant permanent custody if it finds that permanent custody is in the child's best interest and that one of the conditions in R.C. 2151.414(B)(1) applies. *Id.* at ¶ 15. Here, mother does not challenge the juvenile court's finding that the condition in R.C. 2151.414(B)(1)(d) was satisfied because the child was in the temporary custody of HCJFS for 12 or more months of a consecutive 22-month period. Mother challenges the juvenile court's finding that a grant of permanent custody was in the child's best interest.

{¶23} Pursuant to R.C. 2151.414(D)(1), in determining whether permanent custody is in a child's best interest, the juvenile court must consider all relevant

factors, including: (a) the child's interaction with parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (b) the child's wishes, as expressed by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (c) the child's custodial history; (d) the child's need for a legally secure permanent placement and whether that can be achieved without a grant of permanent custody; and (e) whether any of the factors under R.C. 2151.414(E)(7) to (E)(11) apply. *See* R.C. 2151.414(D)(1)(a)-(e).

{¶24} With respect to the factor in R.C. 2151.414(D)(1)(a), mother asserts that her interactions with C.E. included visits to the nursing facility, bringing him clothes, and monitoring his care. The juvenile court found that C.E. required significant medical care that mother is unable to provide. The court found that mother failed to complete her training on how to properly care for the child and had failed to relocate so that necessary nursing care could be provided, despite knowing for several years that relocation was necessary.

{¶25} Mother does not challenge the court's finding that her child is unable to express his wishes, in relation to R.C. 2151.414(D)(1)(b). With respect to the factor in R.C. 2151.414(D)(1)(c), the juvenile court found that the child has been in the temporary custody of HCJFS "for nearly his entire life, and significantly longer than twelve months." Mother challenges the nearly-his-entire-life portion of the statement, pointing out that she had custody of C.E. until he suffered his brain injury in her care at three months old, and for a ten-month period while he was an inpatient at CCHMC. However, given that HCJFS had temporary custody of C.E. for nearly three years before he turned five years old, the court's statement was accurate.

{¶26} As to R.C. 2151.414(D)(1)(d), the court found that the child needed a legally secure permanent placement that was not achievable without a grant of permanent custody. The court determined that C.E. needed to remain at the nursing facility to receive the level of care he requires and that mother was unable to provide the requisite level of care in her home. The record supports the court's finding, and mother does not point to evidence that counters this finding.[1]

{¶27} R.C. 2151.414(D)(1)(e) requires the court to consider whether any factor listed in R.C. 2151.414(E)(7) through (11) applies. Here the juvenile court found that the factors in R.C. 2151.414(E)(8), (E)(10), and (E)(11) applied to mother.

{¶28} R.C. 2151.414(E)(8) provides in relevant part: "The parent has repeatedly withheld medical treatment * * * from the child when the parent has the means to provide the treatment * * *." The juvenile court found that this factor applied because mother had "on multiple occasions" refused to allow the child to receive necessary medical treatment. At trial, the HCJFS caseworker testified that mother did not agree to the surgery to close the child's eyelids "thinking that it would be hard for [C.E.] to wake up if his eyes were shut." While this supported the concern by HCJFS that mother lacked understanding of the child's medical condition, the record does not contain evidence related to mother's "repeatedly" withholding medical treatment to support a finding under R.C. 2151.414(E)(8).

{¶29} The juvenile court found that the factor in R.C. 2151.414(E)(10) applied because mother abandoned the child. A child must be presumed abandoned when its parents have failed to visit or maintain contact with the child for more than 90 days. R.C. 2151.011(C). The juvenile court found that mother failed to visit or

---

[1] Mother also argues that this court remanded the matter so that HCJFS could determine whether a termination of parental rights was necessary to maintain the child at his current facility. However, our remand instructed the juvenile court to correct its clerical error.

contact C.E. between May and December 2019, a period well over 90 days. Although mother now asserts that the evidence was not competent, she did not object at trial to the caseworker's testimony about visitation or provide contradictory evidence, and she did not challenge it in her objections to the magistrate's decision. Moreover, she does not assign as error the juvenile court's admission of the evidence.

{¶30} The factor in R.C. 2151.414(E)(11) states that "[t]he parent has had parental rights involuntarily terminated with respect to a sibling of the child * * *, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child." Mother concedes that her rights were involuntarily terminated as to four of her other children (I.E.-J. in Ohio and three of her other children in Iowa in 2008), and she makes no argument about her ability to provide a secure placement or adequate care for C.E.

{¶31} Following our review of the record, we hold that the juvenile court's determination that C.E.'s best interest is served by a grant of permanent custody is supported by clear and convincing evidence, and is not against the manifest weight of the evidence. Therefore, we overrule mother's second assignment of error.

### IV. Conclusion

{¶32} Consequently, we overrule mother's assignments of error and affirm the judgment of the juvenile court granting permanent custody of C.E. to HCJFS.

Judgment affirmed.

**BERGERON** and **CROUSE, JJ.,** concur.

Please note:

The court has recorded its own entry this date.