[Cite as *State v. Sowders*, 2022-Ohio-2401.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220114 |
| | | TRIAL NO. B-2104918 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| CHRISTOPHER SOWDERS, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:   Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: July 13, 2022


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*L. Patrick Mulligan & Associates L.L.C.*, *Brandon Moermond* and *Frank Matthew Batz*, for Defendant-Appellant.

**MYERS, Presiding Judge.**

{¶1}   In this appeal, defendant-appellant Christopher Sowders challenges the trial court's entry granting the state's motion to hold him without bail pending trial.  Finding no error in the trial court's denial of bail for Sowders, we affirm its judgment.

*Factual and Procedural Background*

{¶2}   Sowders was indicted for the offenses of aggravated robbery, aggravated burglary, and kidnapping.  All offenses were felonies of the first degree and carried an accompanying firearm specification.  Sowders pled not guilty at arraignment, and his bond was set at $500,000.  The bill of particulars alleged in relevant part that:

> [O]n or about August 11, 2021, at approximately 7:00 a.m., behind a residence located at 454 Kitty Lane, Delhi Township, the victim, Elizabeth Ventre was looking for her dogs when she was confronted by Defendant and an unknown person wielding guns; They pointed their guns at her and forced her back up the steps and through the door into the house.  Once they were inside and the door was closed, the two began demanding money from Ms. Ventre and telling her they knew her son had a safe and kept money at her residence.  They tried to zip-tie her hands together, but did so incorrectly.  When Ms. Ventre tried to flee out the door, they knocked her down and she hit her head.
>
> The two men began tearing her house apart looking for money, and she laid down and closed her eyes.  When they couldn't find the money they were expecting, they began stealing her jewelry.  Defendant again demanded money, and when she still told him

she didn't have money in the house, Defendant told Ms. Ventre that he had killed someone before, and wouldn't hesitate to do it again. He added that he wasn't leaving without the money.

Ms. Ventre said that her money was all in the bank, and Defendant forced her to get on her laptop and open her account. Once they confirmed there was money in Ms. Ventre's account, and the banks had opened, they took her to various banks and tried to access ATM's [sic] in and around Delhi. In one bank, when Ms. Ventre withdrew a large sum of money, Defendant told the teller that he was Ms. Ventre's grandson and she was with-drawing [sic] money to buy him a car. While the two men forced Ms. Ventre to drive around to banks and ATM's [sic] with her, they used her car. After they had obtained several thousand dollars of Ms. Ventre's money, they parked in a Kroger parking lot and told her [to] put her head down and not get up for ten minutes. They took her personal information and told her to [sic] that if she ever told anyone what had happened, they would kill her. They then got out of the car and disappeared.

{¶3} Sowders filed a motion to reduce his bond to $100,000 with juris monitoring. The state filed a motion to hold Sowders without bail pending trial. The trial court held a joint hearing on both motions. In support of the motion to reduce bond, Sowders argued that his financial situation prevented him from making the bond currently set at $500,000; that he had no criminal history; that he resided and attended school in Louisville, Kentucky; and that he had complied with all requirements in jail.

{¶4} In support of its motion to hold Sowders without bail, the state argued that the evidence strongly supported a determination that Sowders committed the

charged offenses. On this point, the state asserted that it had obtained photographs from the bank's security system depicting Sowders and Ventre approaching the teller, and that Sowders's DNA was found on a water bottle recovered from a trash can in Ventre's home. The state additionally explained that surveillance cameras from neighborhood businesses and Ring doorbells showed a white Dodge Charger driving up and down Ventre's street. It linked this vehicle to Sowders via records from the Enterprise car rental company establishing that Sowders had rented a Dodge Charger from the company and that the rental period included the date of the offenses in this case. The state additionally linked Sowders to this vehicle by introducing evidence establishing that several days before these offenses occurred, Sowders was questioned by Louisville police on an unrelated matter and that pictures from body-camera video taken during that encounter showed Sowders standing in front of a white Dodge Charger.

{¶5} The state also stressed the violent nature of these crimes, explaining that Ventre suffered a concussion when Sowders knocked her down after she tried to flee from her home. It elaborated on the assertions in the bill of particulars regarding Sowders's multiple threats to shoot Ventre and his statement that he had killed before and would not hesitate to do so again.

{¶6} The state further argued that Sowders, who resided in Louisville, had no ties to Cincinnati and that the court could not restrict him in any way that would both secure his appearance for court and allow Ventre to remain safe. It argued that the court could not place Sowders on electronic monitoring and keep track of him in Louisville.

{¶7} The trial court denied Sowders's motion to reduce bond and granted the state's motion to hold Sowders without bail. In the latter entry granting the state's motion, the trial court found that Sowders had been indicted on three first-degree felony offenses; that the proof was evident and the presumption great that Sowders

4

committed the offenses; that Sowders posed a substantial risk to a person and/or the community; and that no release conditions would reasonably assure the safety of that person or the community.

{¶8} The court additionally found that the charged offenses were offenses of violence, perpetrated with a firearm, during which Sowders had threatened to kill Ventre and caused her physical harm; that Sowders had no ties to the community; and that, based on Sowders's violent crimes and explicit threats to return and kill Ventre and her family members if she reported the matter to the police, he posed a real and grave danger to Ventre and the community.

### *Denial of Bail*

{¶9} In a single assignment of error, Sowders argues that the trial court erred in ordering that he be held without bond.

### *1. The Ohio Constitution*

{¶10} The Ohio Constitution provides:

All persons shall be bailable by sufficient sureties, except for a person who is charged with a capital offense where the proof is evident or the presumption great, and except for a person who is charged with a felony where the proof is evident or the presumption great and where the person poses a substantial risk of serious physical harm to any person or to the community. Where a person is charged with any offense for which the person may be incarcerated, the court may determine at any time the type, amount, and conditions of bail. Excessive bail shall not be required; nor excessive fines imposed; nor cruel and unusual punishments inflicted.

The General Assembly shall fix by law standards to determine whether a person who is charged with a felony where the proof is evident or the presumption great poses a substantial risk of serious physical harm to any person or to the community. Procedures for establishing the amount and conditions of bail shall be established pursuant to Article IV, Section 5(b) of the Constitution of the state of Ohio.

Ohio Constitution, Article 1, Section 9.

{¶11} This constitutional provision has been codified in R.C. 2937.222.

### 2. R.C. 2937.222

{¶12} Pursuant to R.C. 2937.222(A), upon either a motion by the state or upon the trial court's own motion, the trial court shall hold a hearing to determine whether an accused charged with certain specified offenses, including, as relevant to this appeal, a felony of the first degree, shall be denied bail. The accused has the right to be represented by counsel at the hearing, and shall be afforded the right to testify, to present witnesses, and to cross-examine any witnesses who appear. R.C. 2937.222(A). "The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." *Id.* At the hearing, the state has the burden of establishing:

> [T]hat the proof is evident or the presumption great that the accused committed the offense with which the accused is charged, of proving that the accused poses a substantial risk of serious physical harm to any person or to the community, and of proving that no release conditions will reasonably assure the safety of that person and the community.

*Id.*

**{¶13}** The trial court shall not deny the accused bail unless it finds that the state established each of the three requirements in the preceding paragraph by clear and convincing evidence. R.C. 2937.222(B). Clear and convincing evidence is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re K.H.,* 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

**{¶14}** In ascertaining whether the accused poses a substantial risk of serious physical harm to any person or the community and whether any conditions of release would reasonably assure the safety of that person and the community, the trial court shall consider:

(1) The nature and circumstances of the offense charged, including whether the offense is an offense of violence or involves alcohol or a drug of abuse;

(2) The weight of the evidence against the accused;

(3) The history and characteristics of the accused, including, but not limited to, both of the following:

(a) The character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, and criminal history of the accused;

(b) Whether, at the time of the current alleged offense or at the time of the arrest of the accused, the accused was on probation, parole, post-release control, or other release pending trial, sentencing, appeal, or completion of sentence for the commission of an offense under the laws

of this state, another state, or the United States or under a municipal ordinance.

(4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

R.C. 2937.222(C).

{¶15} The denial of bail under this statute is immediately appealable. R.C. 2937.222(D)(1).

### 3. Standard of Review

{¶16} While R.C. 2937.222 provides that, before denying an accused bail, the trial court must find that the state established the conditions set forth in R.C. 2937.222(B) by clear and convincing evidence, the statute does not set forth a standard of review for an appellate court to employ when reviewing the trial court's findings.[1] Neither this court nor the Supreme Court of Ohio has yet been confronted with determining what standard of review to employ in this situation. Two recent cases from the Supreme Court of Ohio concerning excessive bond, however, provide some guidance on this issue.

{¶17} In *Mohamed v. Eckelberry*, 162 Ohio St.3d 583, 2020-Ohio-4585, 166 N.E.3d 1132, the petitioner filed a writ of habeas corpus challenging the amount of his pretrial bond. The court referred the matter to a master commissioner, who held a hearing and determined that the bond on which petitioner was being held was excessive and recommended modifying the bond. *Id.* at ¶ 2. The master commissioner determined that "in an original action for a writ of habeas corpus, an appellate court may receive evidence and exercise its own discretion concerning a petitioner's bail,

---

[1] The statute does provide that the court of appeals must: (1) give the appeal priority on its calendar; (2) liberally modify or dispense with formal requirements in the interest of a speedy and just resolution of the appeal; (3) decide the appeal expeditiously; and (4) promptly enter its judgment affirming or reversing the order denying bail. R.C. 2937.222(D)(1).

without according deference to the trial court's determination." *Id.* at ¶ 4. The respondent challenged the master commissioner's conclusion that the court may independently review petitioner's bond without first holding that the trial court abused its discretion and the reduction in bond. *Id.* at ¶ 3.

{¶18} The court rejected respondent's argument and held that "in an original action, an appellate court may permit a habeas petitioner to introduce evidence to prove his claim and then exercise its own discretion in imposing an appropriate bail amount." *Id.* at ¶ 5. It then went on to consider the factors in Crim.R. 46(C) relevant to determining the type, amount, and conditions of bail, before adopting the master commissioner's recommendation and additionally imposing several nonfinancial conditions of bail.

{¶19} In *DuBose v. McGuffey*, Slip Opinion No. 2022-Ohio-8, the Supreme Court of Ohio considered an appeal from an original action in this court that granted a writ of habeas corpus ordering the reduction of a defendant's bail. DuBose's bail had been set at $1.5 million for charges of murder and aggravated robbery. After the trial court twice denied his motions to reduce the bail, DuBose filed a petition for a writ of habeas corpus before this court challenging the amount of his bail as excessive. Reviewing the issue de novo, we concluded that the trial court failed to consider DuBose's financial resources as was required by Crim.R. 46(C)(4) and that the bail set for DuBose was, in effect, a denial of bail. *Id.* at ¶ 8. We granted DuBose's petition and reduced the bail to $500,000 and imposed several nonfinancial conditions.

{¶20} On appeal, the Supreme Court of Ohio considered the state's argument that this court should have reviewed the trial court's bail determination for an abuse of discretion, not de novo. *Id.* at ¶ 14. The court rejected that argument and held that de novo review was the appropriate standard of review for this court to have applied. *Id.* at ¶ 17. It recognized that in original habeas actions, "a court of appeals may receive new evidence and independently weigh the evidence to make its own bail

determination." *Id.* at ¶ 16. It further noted that this court had not taken additional evidence when reviewing DuBose's petition and had relied on the record before it to conclude "that the bail amount was excessive because it did not take into consideration DuBose's financial resources as required by Crim.R. 46(C)(4)." *Id.* at ¶ 17. The court held that de novo review was appropriate for that question of law. *Id.*

**{¶21}** Thus, following these cases from the Ohio Supreme Court, in original habeas actions concerning the imposition of an allegedly excessive bail, a reviewing court must undertake a de novo review and may take additional evidence when considering whether the amount of bail imposed was unconstitutionally excessive.

**{¶22}** Turning our discussion back to the appropriate standard of review to employ when reviewing the trial court's denial of bail under R.C. 2937.222, a statutory provision as opposed to a constitutional challenge, several of our sister districts have considered what standard of review to apply in this situation, and they are not in unison.

**{¶23}** When reviewing the trial court's denial of bail, the Sixth Appellate District determines if there was "sufficient evidence presented by which the [trial] court could have formed a firm belief or conviction in support of its finding[s]." *State v. Blackshear*, 6th Dist. Lucas No. L-21-1141, 2022-Ohio-230, ¶ 13, quoting *State v. Brown*, 6th Dist. Erie No. E-06-025, 2006-Ohio-3377, ¶ 25. The Tenth Appellate District reviews the trial court's denial of bail for an abuse of discretion. *State v. Henderson*, 10th Dist. Franklin No. 16AP-870, 2017-Ohio-2678, ¶ 5. And the Eleventh Appellate District has elected to employ a hybrid standard of review, akin to that used in the review of a trial court's ruling on a motion to suppress. *State v. Urso*, 11th Dist. Trumbull No. 2010-T-0042, 2010-Ohio-2151, ¶ 47. Under that standard, the court accepts the trial court's findings of fact where the findings are supported by competent, credible evidence, and then reviews the trial court's legal determinations de novo. *Id.*

**{¶24}** The Second and Eighth Appellate Districts have recognized this dissonance among the districts and have not settled on a single standard of review, but rather have reviewed the trial court's denial of bail under all standards recognized by the other districts. *State v. Mitchell*, 2019-Ohio-2465, 139 N.E.3d 556, ¶ 24 (2d Dist.); *State v. Jackson*, 8th Dist. Cuyahoga No. 110621, 2021-Ohio-4320, ¶ 40.

**{¶25}** Some of the districts have considered this issue after *Mohamed* and *DuBose*. While the Eighth Appellate District in *Jackson* considered the issue post-*Mohamed*, only the Sixth Appellate District in *Blackshear* has considered this issue post-*DuBose*, and it did not consider the impact of *DuBose*, if any, in its decision.

**{¶26}** As we settle on a standard of review for this district, we do not find the abuse-of-discretion standard to be appropriate in this situation. Nor are we inclined to apply the de novo standard of review that *Mohamed* and *DuBose* utilized to determine whether the amount of bail imposed was unconstitutionally excessive. Unlike *Mohamed* and *DuBose*, this case is an appeal from the trial court's denial of bail under R.C. 2937.222 and is not an original action. This court may not take additional evidence and is limited to the record before us. Moreover, this case arises out of a statute and not the Constitution.

**{¶27}** With those considerations in mind, we settle on a standard of review similar to that employed by the Sixth District. In our view, this court's review of a trial court's denial of bail under R.C. 2937.222 is comparable to that employed by an appellate court when reviewing a juvenile court's grant of permanent custody. Like the trial court's determination under R.C. 2937.222, a juvenile court's determination on a permanent-custody motion must also be supported by clear and convincing evidence. *In re C.E.*, 1st Dist. Hamilton No. C-210407, 2021-Ohio-3916, ¶ 21. When reviewing whether a juvenile court's grant of permanent custody is supported by clear and convincing evidence, we "examine the record and determine if the juvenile court had sufficient evidence before it to satisfy the clear-and-convincing standard." *Id.*

**{¶28}** We find that this same standard is appropriate to use when reviewing the trial court's denial of bail under R.C. 2937.222. We accordingly review the record to determine whether, in finding that the proof is evident or the presumption great that Sowders committed the charged offenses, that Sowders poses a substantial risk of serious physical harm to any person or to the community, and that no release conditions will reasonably assure the safety of that person and the community, the trial court had sufficient evidence before it to satisfy the clear-and-convincing standard.

### 4. Application to Sowders

**{¶29}** We now apply this standard to determine whether the trial court erred in granting the state's motion to hold Sowders without bail.

### A. Evidence Sowders Committed Offenses

**{¶30}** We begin with the trial court's finding that the proof is evident and the presumption great that Sowders committed the charged offenses. The record contained sufficient evidence in support of this finding to satisfy the clear-and-convincing standard. Sowders's DNA was found on a water bottle inside a trash can in Ventre's home. Photographs obtained from the bank's security system depicted Sowders and Ventre approaching the teller. And Sowders was linked to a white Dodge Charger that was caught on surveillance cameras from neighborhood businesses and Ring doorbells driving up and down Ventre's street.

### B. Evidence Sowders Posed Substantial Risk of Serious Physical Harm

**{¶31}** We next consider the trial court's finding that Sowders posed a substantial risk of serious physical harm to any person or to the community. In doing so, we consider the factors in R.C. 2937.222(C)(1)-(4) set forth above.

**{¶32}** The charged offenses were offenses of violence that were perpetrated with a firearm. Ventre suffered a concussion after being knocked down by Sowders. Additionally, Sowders threatened to shoot Ventre multiple times during the offenses, and he told her he had killed before and would not hesitate to do so again. *See* R.C. 2937.222(C)(1).

**{¶33}** The weight of the evidence against Sowders was strong, including the DNA evidence and surveillance photos capturing his image during the commission of the offenses. *See* R.C. 2937.222(C)(2).

**{¶34}** Sowders has no criminal record, and was not on probation, parole, postrelease control, or any other release at the time of his arrest. Sowders also had a full-time job at the time of his arrest. Sowders has no ties to Cincinnati, and at the time of his arrest lived with his wife and attended school in Louisville, Kentucky. *See* R.C. 2937.222(C)(3). Sowders stresses his lack of both a criminal record and history of weapon use. But this ignores the violence and weapon use that occurred in the facilitation of these offenses. *See Mitchell*, 2019-Ohio-2465, 139 N.E.3d 556, at ¶ 34 (defendant's argument about the absence of violence in his past "ignores the violence that occurred on the day of the shooting incident").

**{¶35}** With respect to the nature and the seriousness of the danger that Sowders's release would potentially pose to Ventre, Sowders threatened to kill Ventre if she reported the offenses. It was reasonable to infer from Sowders's statement that he would seek to retaliate against Ventre for contacting the police. *See* R.C. 2937.222(C)(4).

**{¶36}** Based on the foregoing analysis, we find that the record contains sufficient evidence that Sowders posed a substantial risk of serious physical harm to Ventre or to the community to satisfy the clear-and-convincing standard.

### C.  Evidence that No Conditions Will Reasonably Assure the Safety of Ventre and The Community

**{¶37}** We reach the same determination with respect to the trial court's finding that no release conditions will reasonably assure the safety of Ventre and the community.  Our analysis of the R.C. 2937.222(C) factors also applies to our review of this finding.  We additionally find persuasive the difficulty noted by the state involved with releasing Sowders on electronic monitoring and monitoring him in Louisville—the trial court is simply unable to do so, as it can only keep track of Sowders in Hamilton County.  So the court was faced with the choice between allowing Sowders to return to Louisville with no form of monitoring, or allowing Sowders to be released and remain in Hamilton County on juris monitoring and/or other conditions.  With respect to the latter option, Sowders gave no indication at the hearing that he had a place to stay in Hamilton County.  And given Sowders's threats to harm Ventre if she reported his crimes, the trial court could reasonably have feared that Sowders would cut off any monitoring device and seek revenge on Ventre.

**{¶38}**  Having found that the record contains sufficient evidence in support of the trial court's finding of the conditions set forth in R.C. 2937.222(B) to satisfy the clear-and-convincing standard, we hold that the trial court did not err in granting the state's motion to hold Sowders without bail.  Sowders's assignment of error is overruled, and the judgment of the trial court is, accordingly, affirmed.

Judgment affirmed.

**WINKLER** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.