[Cite as *Gamble v. McGuffy*, 2022-Ohio-4542.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| PETER GAMBLE, | : | CASE NO. C-220272 |
| Petitioner, | : | |
| vs. | : | *O P I N I O N.* |
| CHARMAINE MCGUFFEY, HAMILTON COUNTY SHERIFF, | : | |
| Respondent. | : | |


Original Action in Habeas Corpus

Judgment of the Court: Writ Denied

Date of Judgment Entry: December 16, 2022


*Arenstein and Gallagher, William R. Gallagher* and *Kara C. Blackney*, for petitioner,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex S. Havlin,* Assistant Prosecuting Attorney, for respondent.

**WINKLER, Judge.**

{¶1} Petitioner Peter Gamble files this petition for a writ of habeas corpus in an original action alleging that he is being held unlawfully under an excessive pretrial bail by respondent Hamilton County Sheriff Charmaine McGuffey. For the reasons that follow, we deny Gamble's petition.

## I. Background

{¶2} The state indicted Gamble for aggravated murder, murder, and felonious assault arising from the shooting death of Jearid Irvin. After Gamble's arraignment, the trial court set Gamble's bond at $750,000 "straight." Gamble filed a motion to reduce his bond, and the state responded with a motion to hold Gamble without bond. The trial court held a hearing on both motions.

{¶3} At the bond hearing, the state presented testimony from an investigating detective. The detective testified that she had reported to the scene of Irvin's death, which happened to be a gas station. When the detective began investigating, she learned that Irvin and Gamble had gotten into an altercation at a nearby bank. The detective viewed surveillance video from the bank where Gamble can be seen following closely behind Irvin, and Gamble and Irvin appeared to be arguing. The detective also interviewed two bank employees who witnessed Gamble's unusual behavior.

{¶4} The detective also viewed surveillance footage from the gas station where Gamble and Irvin encountered each other after the bank incident. The detective testified that the video shows Gamble and Irvin engaged in an altercation. Irvin's friend tries to intervene, and Gamble pulls out a firearm and fires. Irvin's friend runs away, and Irvin can be seen lying on the ground. Gamble then fires at Irvin as he is

lying on the ground. Irvin gets up and starts running away. Gamble then pursues Irvin and continues firing. Irvin then falls to the ground. Gamble shoots at Irvin again.

{¶5} In the wake of Irvin's death and the homicide investigation, the investigating detective testified that she had concerns regarding the safety of Irvin's friend, who was able to run away and avoid being shot, and thus would be a key eyewitness. The detective also noted that Irvin, Irvin's friend, and Gamble did not know each other, so the entire encounter developed quickly.

{¶6} On cross-examination, the detective stated that Gamble had no misdemeanor or felony convictions. Gamble had family in the Cincinnati area. Gamble's attorney also questioned whether Gamble was the aggressor, because one of the witnesses at the gas station had seen Irvin and another person on top of Gamble prior to hearing the first shot.

{¶7} The trial court denied the state's request to hold Gamble without bond, and the trial court also denied Gamble's request to reduce his bond.

{¶8} Gamble filed this original action for a writ of habeas corpus under R.C. 2725.04, alleging that his pretrial bail is excessive. In Gamble's verified petition, he asserts that he is currently incarcerated in the Hamilton County Justice Center under a $750,000 bond. Gamble requests that this court lower his bond to $100,000 at ten percent. Gamble filed the transcript and pertinent trial court entries. The state filed a response urging this court to deny Gamble's requested writ. The state also filed letters written by the deceased victim's mother and widow.

## II. Law

{¶9} The Ohio Constitution, Section 9, Article 1, establishes habeas corpus as a proper vehicle for alleging an excessive-pretrial-bail claim. This court has

3

determined that we will apply a de novo "standard of review" in an original action alleging excessive pretrial bail. *State v. Sowders*, 1st Dist. Hamilton No. C-220114, 2022-Ohio-2401, ¶ 21, relying on *Mohamed v. Eckelberry*, 162 Ohio St.3d 583, 2020-Ohio-4585, 166 N.E.3d 1132, and *DuBose v. McGuffey*, 168 Ohio St.3d 1, 2022-Ohio-8, 195 N.E.3d 951. A petitioner bears the burden to demonstrate " 'with particularity the extraordinary circumstances entitling him to habeas corpus relief.' " *Drew v. State ex rel. Neil*, 2020-Ohio-4366, 158 N.E.3d 684, ¶ 4 (1st Dist.), quoting *State ex rel. Wilcox v. Seidner*, 76 Ohio St.3d 412, 414, 667 N.E.2d 1220 (1996).

{¶10} Crim.R. 46 governs pretrial release of a defendant. Under Crim.R. 46(B), if a court chooses to issue pretrial bail,

> the court shall release the defendant on the least restrictive conditions that, in the discretion of the court, will reasonably assure the defendant's appearance in court, the protection or safety of any person or the community, and that the defendant will not obstruct the criminal justice process. If the court orders financial conditions of release, those financial conditions shall be related to the defendant's risk of non-appearance, the seriousness of the offense, and the previous criminal record of the defendant. Any financial conditions shall be in an amount and type which are least costly to the defendant while also sufficient to reasonably assure the defendant's future appearance in court.

{¶11} Under Crim.R. 46(C), in evaluating the amount of a bond, a court shall consider the following:

> (1) The nature and circumstances of the crime charged, and specifically whether the defendant used or has access to a weapon;

4

(2) The weight of the evidence against the defendant;

(3) The confirmation of the defendant's identity;

(4) The defendant's family ties, employment, financial resources, character, mental condition, length of residence in the community, jurisdiction of residence, record of convictions, record of appearance at court proceedings or of flight to avoid prosecution;

(5) Whether the defendant is on probation, a community control sanction, parole, post-release control, bail, or under a court protection order.

**{¶12}** In *DuBose*, a divided Ohio Supreme Court determined that under Crim.R. 46(C), "public safety is not a consideration with respect to the financial conditions of bail[.]" *DuBose*, 168 Ohio St.3d 1, 2022-Ohio-8, 195 N.E.3d 951, at ¶ 24. After the *Dubose* decision, in November 2022, the Ohio voters approved an amendment to Section 9, Article 1 of the Ohio Constitution, which now explicitly provides that when a court determines an amount of bail, "the court shall consider public safety, including the seriousness of the offense, and a person's criminal record, the likelihood a person will return to court, and any other factor the general assembly may prescribe."

### III.   Analysis

**{¶13}** Gamble argues in his petition that he has no criminal history, he is a lifelong Cincinnati resident with family in the area, he has maintained employment prior to his incarceration on the current charges, he has no history of failing to attend court hearings, and he cannot afford the bail amount set by the trial court. In response, the state points to the seriousness of the offenses for which Gamble has been charged—

namely aggravated murder. Gamble does not dispute that he used a gun to shoot and kill the victim, but instead he claims he did so in self-defense. The evidence the state produced at the bail hearing, however, included testimony from a detective who watched surveillance video showing Gamble prior to the shooting following closely behind the victim inside a bank. The surveillance video from the gas station where the shooting occurred showed Gamble continuing to shoot the victim after he collapsed.

{¶14} Gamble has no major criminal history, and there is no evidence that Gamble has tried to leave the jurisdiction, but where an accused is charged with a serious offense and faces a long prison sentence, " 'the incentive to abscond is greater and the amount must be such as to discourage the accused from absconding.' " *Stevens v. Navarre*, 2021-Ohio-551, 168 N.E.3d 578, ¶ 18 (6th Dist.), quoting *Bland v. Holden*, 21 Ohio St.2d 238, 239, 257 N.E.2d 397 (1970). Gamble also asserts that he does not have the financial resources to afford the bail amount set by the trial court, but Gamble offers no evidence to support this assertion.

{¶15} The victim's family members also submitted statements detailing their fear for the safety of the community should Gamble be released. Gamble and the victim did not know each other, and the victim's death was the direct result of an argument that developed between the two during a chance encounter inside a bank. The victim's mother noted her concern for the community based on the rashness of Gamble's actions. The trial court also stated at the bond hearing that it had concerns regarding Gamble's mental state based on his behavior at the arraignment hearing and at the bond hearing. At the end of the bond hearing, the trial court ordered that Gamble undergo a competency evaluation. The investigating detective also mentioned

6

the risk posed to the victim's friend, who was present with the victim during the shooting and would be a key eyewitness.

{¶16} Considering the evidence before us, Gamble has not met his burden to demonstrate extraordinary circumstances entitling him to habeas-corpus relief.

### Conclusion

{¶17} We deny Gamble's petition for a writ of habeas corpus.

Writ denied.

**MYERS, P.J.,** concurs.
**CROUSE, J.,** dissents.

**CROUSE, J.,** dissenting.

{¶18} Because the $750,000 straight bail amount is tantamount to a denial of bail, I would hold that Gamble's bail amount is unconstitutionally excessive and grant his habeas petition.

{¶19} Despite the recent amendment to the Ohio Constitution, which requires a court to consider public safety when determining an amount of bail, the Ohio Constitution still states that "Excessive bail shall not be required." It is well-established that "[a] bail amount that is 'higher than an amount reasonably calculated to' ensure the accused's presence in court is 'excessive.' " *Dubose v. McGuffey*, 168 Ohio St.3d 1, 2022-Ohio-8, 195 N.E.3d 951, ¶ 12, quoting *Stack v. Boyle*, 342 U.S. 1, 5, 72 S.Ct. 1, 96 L.Ed. 3 (1951).

{¶20} As set forth in *Dubose*:

if the state believes that a person poses a danger to the community and must be held without the possibility of release, then the state must follow the procedures set forth in R.C. 2937.222 for an order of detention without bail. In order to hold a person without bail under that

7

statute, the judge must find by clear and convincing evidence that "the proof is evident or the presumption great that the accused committed the [serious offense] with which the accused is charged, * * * that the accused poses a substantial risk of serious physical harm to any person or to the community, and * * * that no release conditions will reasonably assure the safety of that person and the community." R.C. 2937.222(B).

*Id*. at ¶ 21.

**{¶21}** On March 31, 2022, which was the day of the hearing for Gamble's motion to reduce bond, the state filed a motion pursuant to R.C. 2937.222 for an order of detention without bond. At the request of the defendant, the case was continued to April 11, 2022, for a hearing on the pending bond motions. In the meantime, the judge recused herself and the case was rerolled to a different judge. On April 18, 2022, the case was again continued to April 26, 2022, for a bond hearing at the request of the defendant.

**{¶22}** At the April 26 bond hearing, the defense argued that because the hearing was not held within five days of the filing of the state's R.C. 2937.222 motion,[1] the court did not have jurisdiction to hold Gamble without bond. The state argued that the delay was not the fault of the state because the continuances were requested by the defense. The state further argued that it was not prepared to argue the jurisdictional issue because the defense did not previously raise the issue. The court

---

[1] R.C. 2937.222 states, "Except for good cause, a continuance on the motion of the accused shall not exceed five court days unless the motion of the accused waives in writing the five-day limit and states in writing a specific period for which the accused requests a continuance. A continuance granted upon a motion of the accused that waives in writing the five-day limit shall not exceed five court days after the period of continuance requested in the motion."

went ahead and held a hearing on both motions. At the conclusion of the hearing, the court took the matter under advisement.

{¶23} The court also referred Gamble for a competency evaluation. The record reflects that Gamble was extremely distraught during the hearing. The court noted that "he has been crying the entire time or clearly visibly upset." The court was concerned that he could not help in his defense. Defense counsel informed the court that while Gamble "is an emotional young man in terms of being torn up about this," he did not have any concern about Gamble's competency. Nevertheless, a competency evaluation was ordered.

{¶24} The competency report was submitted to the court on March 31, 2022, presumably finding Gamble competent to stand trial. That same day, the court denied the state's motion to detain Gamble without bond and denied Gamble's motion to reduce bond. The judge's reasoning for these decisions is not on the record.

{¶25} In its response to the habeas petition, the state's argument focuses on whether Gamble has met his burden of demonstrating that he is unable to make the $750,000 straight bond. The state argues that Gamble "offers no specific information in support of [his] statement" that he cannot make the bond. The majority also holds that Gamble "offers no evidence to support his assertion." I disagree.

{¶26} The state acknowledges that Gamble was found to be indigent immediately following his arrest because he was unable to work due to his pretrial detention. He was assigned a public defender. The state points out that private counsel signed on to the case approximately two months after his arrest. However, there is no information in the record regarding what the fee arrangement is or who, if anyone, is paying counsel's fee, if any.

9

**{¶27}** Nevertheless, it is clear from Gamble's motion to reduce bond, that prior to his arrest he worked full-time making $17 per hour.[2] Gamble also pays child support for two children, and his motion indicates that he is in good standing with his payments. The motion states that he lives in an apartment, and not a home that he owns. Thus, it is clear from the motion that Gamble is not a rich man by any means.

**{¶28}** At the bond hearing, Gamble's attorney told the court that Gamble was prepared to testify to the accuracy of the statements set forth in his motion to reduce bond. The court agreed that counsel "could just ask him about paragraphs one through whatever * * * ." However, before counsel could begin his questioning, the state asked for a sidebar. There is no transcript in the record of this sidebar discussion. After the sidebar, the court stated, "You're representing to the court that all those paragraphs from the top–first–the second paragraph on page three to the first to the last paragraph on page [sic] are true and correct?" Counsel responded, "Yes ma'am." To which the court responded, "Okay, that's all I need to know." The state did not ask to cross-examine Gamble about any of those statements. The state also did not argue that Gamble had not met his burden of demonstrating that he could not afford the $750,000 straight bond.

**{¶29}** It is unclear to me what additional evidence the state or the majority believes that Gamble must provide to show that he cannot afford a $750,000 bond— an amount that most people would agree is extremely high, especially for someone making $17 per hour. Gamble was prepared to testify at the bond hearing and both the state and the court indicated that his testimony was not necessary because they

---

[2] Gamble's hourly wage multiplied by 2080 working hours per year amounts to $35,360 per year.

would accept the statements made in the bond motion. There was no indication that either the state or the court disbelieved the statements set forth in Gamble's motion.

{¶30} The state's focus at the bond hearing was on the nature and circumstances of the crime charged, that Gamble had a weapon, and that he is a danger to the community. This is because the state was trying to hold Gamble without bond. There is no doubt that the allegations in this case are serious and tragic. Gamble shot and killed Irvin when they were engaged in a physical altercation at a gas station. But the majority discounts some important testimony from the bond hearing.

{¶31} The investigating detective testified that after a verbal altercation occurred between Gamble and Irvin at a nearby bank, Irvin and another individual seemed to have followed Gamble to the gas station because they pulled into the parking lot at a high rate of speed after Gamble was already there. The detective agreed that the surveillance video showed Irvin and the other individual jump out of their van and engage in another verbal altercation with Gamble. Irvin and Gamble got into a physical altercation and Gamble shot Irvin in the abdomen. The detective testified that the video showed Irvin on top of Gamble on the ground. In addition, the detective acknowledged that two witnesses at the gas station told investigators that after they heard the shot, they saw Irvin on top of Gamble. The detective was asked on cross-examination, "So you're aware that at least two different people that were in the Shell station, one was an employee who said [Gamble] was getting his ass whooped by two guys?" The detective responded, "Yes." Counsel then asked, "Would you agree with me that during your interview with Mr. Gamble he was pretty distraught?" The detective answered, "Yes" and she agreed that Gamble was crying.

{¶32} I raise these additional facts because we are to consider the nature *and circumstances* of the crime charged, whether the defendant had access to a weapon, and the weight of the evidence against him. Crim.R. 46(C). Gamble has a concealed-carry license and, at age 31, has no criminal record. He is alleged to have committed a very serious crime, but according to the investigating detective, was engaged in a physical altercation with someone he did not know after that person pursued him into the gas station parking lot after a verbal altercation at a nearby bank. According to the detective, he was extremely distraught after the shooting and expressed remorse for his actions. He claims he acted in self-defense. While it is appropriate for us to consider the facts surrounding the allegations, "we are not the finders of fact concerning his guilt." *Mohamed v. Eckelberry*, 162 Ohio St.3d 583, 2020-Ohio-4585, 166 N.E.3d 1132, ¶ 13. It will be up to a jury to decide whether Gamble committed murder or acted in self-defense.

{¶33} In order for Gamble to be detained without bond, the state was required to prove three things by clear and convincing evidence: 1) "the proof is evident or the presumption great that the accused committed the offense with which the accused is charged," 2) "that the accused poses a substantial risk of serious physical harm to any person or to the community," and 3) "that no release conditions will reasonably assure the safety of that person and the community." R.C. 2937.222. By denying the state's motion to detain Gamble without bond, the judge necessarily found that the state had not met its burden and Gamble was bailable.

{¶34} Under both the United States and Ohio Constitutions, excessive bail is unconstitutional. With the new Ohio constitutional amendment, safety of the community can be considered in setting the amount of bail. But how to apply these

two parts of Section 9, Article 1 of the Ohio Constitution at the same time seems rather tricky to me. Certainly, a bail of $750,000 would not be too much for someone like Elon Musk to pay. So, I question how we would protect the safety of the community with cash bail if Musk were charged with this offense? Really, the only way to do so would be to detain him without bond.

{¶35} The judge below held that Gamble was bailable by denying the state's motion to detain him without bond. Thus, she necessarily found that Gamble did not pose a substantial risk of serious physical harm to any person or to the community and that there were release conditions that will reasonably assure the safety of the community.

{¶36} I believe that Gamble put forth sufficient evidence that he could not afford the $750,000 straight bail. And most importantly, the state never contested this at the bond hearing.

{¶37} Gamble is a lifelong resident of Hamilton County, is the father of two children and before these charges, he maintained a steady job. He has no criminal record and possessed a concealed-carry license. While the facts of this case are disturbing, Gamble is still innocent until proven guilty. Because the bail in this case is excessive, it is unconstitutional. Accordingly, I would grant Gamble's habeas petition and order that his bail be reduced to $100,000 at ten percent, which is an amount that Gamble claims he can afford.

{¶38} For all of these reasons, I dissent.

Please note:

The court has recorded its own entry on the date of the release of this opinion.