[Cite as *State v. Knowles*, 2022-Ohio-3264.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals No.  L-22-1042

     Appellee                                          Trial Court No.  CR0202201254

v.

Amaun Knowles                                    **DECISION AND JUDGMENT**

     Appellant                                         Decided:  September 16, 2022

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Karin L. Coble, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} Appellant, Amaun Knowles, appeals from a judgment entered by the Lucas

County Court of Common Pleas, denying him bail.  For the reasons that follow, we

affirm the judgment of the trial court.

## Statement of the Case and the Facts

{¶ 2} On February 16, 2022, appellant and his co-defendants, James Woods and Cynthia Radsick-Wood, were indicted on charges of felonious assault, in violation of R.C. 2903.11(A)(2) and (D), and improperly discharging a firearm at or into a habitation, in violation of R.C. 2923.161(A)(1) and (C). Both offenses were felonies of the second degree, and both carried firearm specifications.

{¶ 3} On February 25, 2022, a hearing was held to determine whether appellant should be denied bail. At the hearing, the state proffered testimony by a single witness, Toledo Police Detective James Tucker, who testified to the following facts. On January 1, 2022, Detective Tucker responded to 406 Daniels Avenue, following a 911 call to police. Officers who were already on the scene observed bullet holes in the house. The home's occupant ("the victim") told police that he had argued with his girlfriend, C.W., earlier that day and that she had broken some items and then left the residence. The victim further stated that he awoke a couple hours later when a car pulled up outside his home. He looked out the window and saw C.W. insider her maroon Tahoe. He also saw James Woods get out of the car and reach into his pocket. The victim thought Woods was retrieving a firearm, so he "dove onto the ground." He then heard gunshots and saw that his home was being shot.

{¶ 4} Detective Tucker discovered 22 9-millimeter shell casings in the street outside the residence, and he found bullet holes and fragments inside the home. He

2.

stated that the bullet fragments were unique, because they were coated in an orange rubber substance that he had never seen before. Two bullet holes were in the window that the victim had been looking through when he saw Woods getting out of the vehicle.

{¶ 5} The victim directed police crews to the home of his girlfriend, C.W., at 702 Bronx Drive. When police arrived, they found a purple SUV parked in the driveway. The vehicle was still warm from having been recently driven, and there were fresh footprints leading to the residence. Police brought the occupants of the house – namely, C.W., C.W.'s daughter Cynthia Radsick-Wood, Radsick-Wood's boyfriend James Woods, and appellant – to the Toledo Police Safety Building to be interviewed.

{¶ 6} During the interview, C.W. provided the following information. On the day in question, C.W. told the others in the house that the victim had assaulted her while they were having an argument. She, Woods, appellant, and Radsick-Wood got in the vehicle and went to confront the victim. Radsick-Wood drove the group, and when they arrived at the victim's house, James Woods and appellant exited the car, went up to the front door of the house, and knocked. When no one answered, C.W. saw Woods reach inside his clothing and pull out a firearm. She closed her eyes, and then heard two guns firing.

{¶ 7} Cynthia Radsick-Wood confirmed that she drove the others to the victim's house and said that C.W. was in the passenger's seat, while appellant and Woods were in the back seat. She told police that she saw both appellant and Woods get out of the

3.

vehicle.  She also said that she saw both men pull out firearms, point them at the house, and fire gunshots.

{¶ 8} Appellant told police that he was dropped off at C.W.'s house at about 10:00 p.m., and that he fell asleep in the upstairs bedroom, where he remained until Toledo Police officers arrived.

{¶ 9} Detective Tucker testified that he had reviewed a recorded phone call between appellant and an individual that appellant identified as his uncle.  Appellant stated during the conversation with his uncle that he did go to the house in question and that he had a firearm, but he claimed not to have fired any shots.

{¶ 10} Police obtained a search warrant for the house at 702 Bronx.  Upon executing the search warrant, police discovered two 9-millimeter handguns loaded with bullets that were coated in the same orange substance that was found on the bullet fragments discovered inside the victim's house.

{¶ 11} Detective Tucker testified that gun violence is a serious problem in Toledo, and that both shootings and deaths from shootings have recently increased.  He said that 22 gunshots had the potential to injure or kill "even more than 22" people.  He also acknowledged that a 10-year-old girl had recently been shot and killed while sitting in an automobile.

4.

**{¶ 12}** Detective Tucker testified that the electronic monitoring department in Lucas County is not staffed 24 hours a day, 7 days a week, and that the electronic monitors can be, and at times have been, removed by the wearer.

**{¶ 13}** At the conclusion of the evidentiary hearing, the court described the offenses in this case as having their origins in a domestic dispute but, ultimately, as creating a situation that endangered individuals not directly involved in the dispute:

> [S]ome may struggle to see how [shots fired into a home as the result of a domestic dispute] would present a risk to the community or persons at large, but those persons would fail to realize one defect with bullets. They do not have brakes. They do not stop when they hit or miss the people, places, or things they are aimed at. Bullets continue to travel through stucco, through brick, through wood, through glass, through people. Houses are not transparent. * * * [B]ased upon the evidence of the State they pulled up in this vehicle. Two people got out, and they started to fire in a home without knowing who or how many people were inside, and this is Toledo. It is an urban city. There are other homes, other people in the same general area where this took place.

The court pointed out that the legislature considered the crimes in question to be serious, and that the offenses carried a combined six-year mandatory sentence, together with a maximum prison term of anywhere from 22 to 26 years.

5.

{¶ 14} The court also reviewed the evidence from the hearing, noting appellant's admission that he was present at the crime, the fact that multiple shots were fired, and the fact that witnesses, including appellant himself, identified appellant has possessing a weapon. The court acknowledged appellant's lack of a criminal record, but nevertheless found the following, by clear and convincing evidence:

> Proof is evident or the presumption is great that the accused committed the offense described. The accused poses a substantial risk of serious physical harm to persons and property within this community. No release conditions will reasonably assure the safety of persons in the community.

The court further stated that placement on electronic monitoring would permit appellant to move within the community and, thus, would "offer no protection for the victim or any other persons involved or identified in this offense." In accordance with the foregoing findings and conclusions, the trial court ordered that appellant be held without bond.

## Assignments of Error

{¶ 15} Appellant asserts the following assignments of error on appeal:

I. The trial court erred as a matter of law by denying Mr. Knowles' bond entirely pursuant to R.C. 2937.222(B).

II. Defense counsel rendered ineffective assistance of counsel by failing to introduce any evidence on Mr. Knowles' behalf.

6.

**Analysis**

{¶ 16} Appellant argues in his first assignment of error that the trial court erred when it ordered him to be held without bail pursuant to R.C. 2937.222. The statute provides that a defendant charged with certain serious offenses, including, as relevant to this appeal, a felony of the second degree, may be denied bail if the trial court holds a hearing and finds that: (1) the proof is evident or the presumption great that the accused committed the charged offense; (2) the accused poses a substantial risk of serious physical harm to any person or to the community; and (3) no release conditions will reasonably assure the safety of that person and the community. R.C. 2937.222(A) and (B).

{¶ 17} In determining whether the accused poses a substantial risk of serious physical harm to any person or to the community and whether there are conditions of release that will reasonably assure the safety of that person and the community, the trial court shall consider all available information regarding all of the following:

(1) The nature and circumstances of the offense charged, including whether the offense is an offense of violence or involves alcohol or a drug of abuse;

(2) The weight of the evidence against the accused;

(3) The history and characteristics of the accused, including, but not limited to, both of the following:

7.

(a) The character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, and criminal history of the accused;

(b) Whether, at the time of the current alleged offense or at the time of the arrest of the accused, the accused was on probation, parole, post-release control, or other release pending trial, sentencing, appeal, or completion of sentence for the commission of an offense under the laws of this state, another state, or the United States or under a municipal ordinance.

(4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

R.C. 2937.222(C).

{¶ 18} An accused shall not be denied bail unless the trial court finds that the state established each of the three requirements by clear and convincing evidence. R.C. 2937.222(B). Clear and convincing evidence is more than "a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *State v. Marcum*, 146 Ohio

8.

St.3d 516, 2016-Ohio1002, 59 N.E.3d 1231, ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. This court has recognized that when findings must be supported by clear and convincing evidence, the reviewing court "will examine the record to determine whether the trier of fact had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Blackshear,* 6th Dist. Lucas No. L-21-1141, 2022-Ohio-230, ¶ 12, quoting *State v. Mitchell*, 2d Dist. Montgomery No. 28280, 2019-Ohio-2465, ¶ 17.

{¶ 19} This court has also recognized that there is no consensus in Ohio as to the appropriate standard of review for an appellate court to apply when reviewing the trial court's findings. *Blackshear* at ¶ 13. Previously, this court has looked to whether there was "sufficient evidence presented by which the [trial] court could have formed a firm belief or conviction in support of its finding[s]." *Id.* By contrast, the Tenth District has applied an "abuse of discretion" standard, while the Eleventh has applied a mixed standard of review. *See id.* at 13-14, citing *State v. Henderson*, 10th Dist. Franklin No. 16AP-870, 2017-Ohio-2678, ¶ 5; *State v. Foster*, 10th Dist. Franklin No. 08AP-523, 2008-Ohio-3525, ¶ 6; and *State v. Urso*, 11th Dist. Trumbull No. 2010-Ohio-2151, ¶ 47.

{¶ 20} The Second and Eighth Districts have not adopted a specific standard of review, but rather have reviewed the trial court's denial of bail under all three of the previously mentioned standards. *See State v. Mitchell*, 2019-Ohio-2465, 139 N.E.3d 556, ¶ 24 (2d Dist); *State v. Jackson*, 8th Dist. Cuyahoga No. 110621, 2021-Ohio-4320, ¶ 40.

9.

Most recently, the First District, in *State v. Sowders,* 1st Dist. Hamilton No. C-220114, 2022-Ohio-2401, has decided to review a trial court's denial of bail by considering whether "the trial court had sufficient evidence before it to satisfy the clear-and-convincing standard." *Id.* at ¶ 28.

{¶ 21} Appellant, citing a recently issued Ohio Supreme Court opinion in *DuBose v. McGuffey*, Slip Opinion No. 2022-Ohio-8, urges us to apply a *de novo* standard of review when reviewing the denial of bail in this case. In considering the applicability of *DuBose*, we are mindful that *DuBose* involved an appeal from an original action -- specifically an appeal from a writ of habeas corpus ordering the reduction of a defendant's bail -- and not a direct appeal from a denial of bond. In habeas actions, the appellate court "may receive new evidence and independently weigh the evidence to make its own bail determination." *Id.* at ¶ 16. In contrast to habeas proceedings, direct appeals involve a review process that is limited to the record under consideration. *See Sowders* at ¶ 26 (in considering an appeal from the trial court's denial of bail under R.C. 2937.222, the court may not take additional evidence and is limited to the record before it). Given this fundamental distinction between the two proceedings, we find that application of a de novo standard of review, although clearly appropriate in the context of an appeal from an original action, is not appropriate in the context of an appeal from a trial court's denial of bail under R.C. 2937.222. *Accord Sowders* at 26.

10.

**{¶ 22}** Although this court has recently applied, in addition to our own standard, the standards used in the Tenth and Eleventh Districts in our review of a trial court's denial of bail, *see Blackshear* at ¶ 25, we now settle on our originally-stated standard, which considers only whether there was "sufficient evidence presented by which the [trial] court could have formed a firm belief or conviction in support of its finding[s]." *Blackshear* at ¶ 13, quoting *State v. Brown*, 6th Dist. Erie No. E-06-025, 2006-Ohio-3377, ¶ 25.

**{¶ 23}** Appellant in the instant case argues that the evidence was insufficient to support any of the trial court's findings under R.C. 2937.222 (A) and (B).

**{¶ 24}** We begin with the trial court's first finding that the "[p]roof is evident or the presumption is great that the accused committed the offense described." Appellant complains that "there should be no 'great' presumption" that appellant committed the shootings. This complaint, however, ignores the second part of the test, which permits a finding that "the proof is evident" that the accused committed the offense. *See* R.C. 2937.222(B). Testimony at the hearing certainly supported a finding that "the proof is evident" that appellant committed the offenses in question. Radsick-Wood told police that she saw both appellant and Woods get out of the vehicle. She also said that she saw each man pull out a firearm, point them at the house, and fire gunshots. C.W. told officers that appellant and Woods got out of the vehicle and went up to the front door

11.

together, and that although she closed her eyes when she saw Woods pull out a firearm, she heard the sound of two different guns being fired.

{¶ 25} Appellant questions Radsick-Wood's credibility because she had "a motive to lie to protect her boyfriend, Woods." The argument would be more persuasive if Radsick-Wood had identified appellant as the lone shooter. In fact, Radsick-Wood implicated Woods, appellant, and herself, suggesting that any instinct for self-preservation and affection for Woods were not great enough to overcome her truthfulness. Her identification of Woods as one of the shooters and her admission of her own culpability in the night's events would seem to bolster, rather than impugn, her credibility.

{¶ 26} Appellant also attempts to manufacture a conflict between the victim and Radsick-Wood's testimony as to the number of individuals who got out of the car. The victim stated that he saw one individual get out of the car and move as if to draw a weapon, and so he "dove for cover." That testimony does not contradict Radsick-Wood's testimony. Rather, the victim merely described what he saw in the moments before he took cover. Another individual may well have emerged from the vehicle after he "dove onto the ground." Moreover, as the trial court observed, appellant himself admitted during a recorded phone call that he was present and had a firearm.

{¶ 27} Based on the foregoing, we find that the record contains sufficient evidence by which the trial court could have formed a firm belief or conviction in support of its

12.

first finding, that proof was evident or the presumption was great that appellant committed the offenses described. *Blackshear,* 6th Dist. Lucas No. L-21-1141, 2022-Ohio-230 at ¶ 13.

{¶ 28} Next, we consider the trial court's second finding, that "[t]he accused poses a substantial risk of serious physical harm to persons and property within this community." In doing so, we consider the factors set forth in R.C. 2937.222(C)(1)-(4), which address not only the nature and circumstances of the offense and the weight of the evidence against the accused -- the substance of which has been previously discussed, above -- but also the history and characteristics of the accused, including the accused's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, and criminal history, together with the nature and seriousness of the danger to any person or the community that would be posed by the accused's release.

{¶ 29} Regarding this finding, appellant initially complains that the trial court erred in stating that appellant's lack of a criminal record is "not a relevant factor." Read in context, however, the statement amounts to nothing more than an acknowledgment of defense counsel's argument that appellant had no criminal record, a matter that was not contested by the witness or the prosecution, and a fact that was in evidence as a result of Detective Tucker's testimony. The remaining portion of the court's statements made

13.

clear that despite appellant's lack of a criminal record, the offenses charged were quite serious and posed a threat to the community.

{¶ 30} Appellant next complains that the trial court failed to consider other factors set forth in R.C. 2937.222(C)(3)(a), including "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, and criminal history." Although there was no evidence presented with respect to some of these factors, our task under *Blackshear* is to determine whether the trial court had "sufficient evidence" by which it "could have formed a firm belief or conviction in support of its finding[s]." *Id.* at ¶ 13. As indicated above, R.C. 2937.222(C) requires only that a trial court "consider all available information" regarding the enumerated factors.

{¶ 31} Here, in addition to evidence surrounding the nature and circumstances of the offense charged, including evidence going to the weight of the evidence against appellant, the trial court heard undisputed evidence that appellant had no criminal history. The trial court also heard undisputed statements by defense counsel that appellant was "young," unemployed, lacked finances, and lived with his parents, both of whom were employed and were home-owners. Appellant can point to nothing in the record to suggest that the trial court did not consider all of the available information before it.

{¶ 32} In this case, the evidence contradicts any suggestion that appellant was not a threat to others. Detective tucker testified that the crimes in this case involved gunshots

14.

fired into an occupied home in an urban area. The circumstances presented a danger to any individuals in the home as well as to those in the vicinity of the home. Although no physical injuries occurred, the lack of injury to others was a matter of pure chance. There is no question that the shooting in this case was extremely reckless and dangerous to the community. "[E]vidence demonstrating the severity of the actions that [an appellant] [has] already taken" may support a finding of a substantial risk of serious physical harm. *See Blackshear*, 6th Dist. Lucas No. L-21-1141, 2022-Ohio-230, at ¶ 20.

{¶ 33} For all of the foregoing reasons, we find that the record contains sufficient evidence and information by which the trial court could have formed a firm belief or conviction in support of its second finding, that appellant posed a substantial risk of serious physical harm to persons and property within the community. *Blackshear* at ¶ 13; *see also* R.C. 2937.222(C).

{¶ 34} Lastly, we consider the trial court's third finding, that "[n]o release conditions will reasonably assure the safety of persons in the community." Defense counsel advocated in the trial court for release on electronic monitoring, but Detective Tucker testified that the electronic monitoring unit is not staffed around the clock, and that the units may be removed by a defendant. Given evidence that the crimes in this case involved serious violent actions that endangered both the victim and the community at large, together with the fact, as noted by the trial court, that placement on electronic monitoring would permit appellant to move within the community and would "offer no

15.

protection for the victim or any other persons involved in [these offenses]," we find that it could reasonably be inferred that the vulnerabilities of electronic monitoring make it an unsuitable means of supervising appellant.

{¶ 35} Accordingly, we find that the record contains sufficient evidence by which the trial court could have formed a firm belief or conviction in support of its third finding, that no release conditions would reasonably assure the safety of persons in the community. *Blackshear* at ¶ 13.

{¶ 36} For all of the foregoing reasons, it is our conclusion that there was sufficient evidence presented by which the trial court could have formed a firm belief or conviction in support of all of its findings under R.C. 2937.222. *Blackshear* at ¶ 13. Appellant's first assignment of error is, therefore, found not well-taken.

{¶ 37} Appellant argues in his second assignment of error that his counsel rendered ineffective assistance by failing to offer any evidence of appellant's "character, physical [or] mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, [or] criminal history," all of which the trial would be required to consider when making a denial of bail determination. *See* R.C. 2937.222(C)(3)(a).

{¶ 38} In order to prevail on a claim that counsel was ineffective, appellant must first show that his counsel's representation was deficient in that it fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-689, 104 S.Ct.

16.

2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). Appellant must also show that the deficient performance prejudiced him to such a degree that there is a reasonable probability that, but for trial counsel's errors, the result would have been different. *Strickland*, 466 U.S. 668, at 691-696; *Bradley* at paragraph three of the syllabus.

{¶ 39} In the instant case, appellant argues that defense counsel's performance was deficient, inasmuch as he failed to submit *any* evidence going to the R.C. 2937.222(C)(3)(a) factors. In support of his position, appellant points out that "[t]he record shows that defense counsel had evidence that should have been introduced: Defense counsel stated [during recross examination of Detective Tucker] that Knowles was 'young,' lived with his parents, both of whom are employed and own a home, and that his community ties are such that he is not a flight risk." Appellant further suggests that defense counsel "should have investigated" appellant's educational background, any religious background, any work history, or other community ties.

{¶ 40} Assuming, without deciding, for purposes of analysis that defense counsel performed deficiently in failing to submit relevant evidence, appellant must also demonstrate that he was prejudiced by such deficient performance. In this case, neither the prosecution nor the trial court disputed appellant's lack of a criminal history or that appellant was "young" and living with his employed, home-owning parents. Detective Tucker expressly admitted that appellant had no prior record with the City of Toledo.

17.

And no one disputed defense counsel's statements during argument that appellant was unemployed and lacked finances. It is unclear what specific additional evidence appellant thinks would have assisted case. In the absence of such evidence, appellant cannot demonstrate that a different outcome was likely if counsel had pursued a presentation of evidence rather than presenting arguments and making statements during witness examination. Because we cannot state that defense counsel's alleged deficiency affected the outcome of the bail hearing in this case, appellant's second assignment of error is found not well-taken.

{¶ 41} The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.

_____
JUDGE

Christine E. Mayle, J.

_____
JUDGE

Myron C. Duhart, P.J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/