[Cite as *State v. Dearth*, 2023-Ohio-968.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
JACKSON COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 23CA2 |
| Plaintiff-Appellee, | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| v. | : | |
| Eric Dearth, | : | **RELEASED 3/22/2023** |
| Defendant-Appellant. | : | |

_____
APPEARANCES:

Harry R. Reinhart, Reinhart Law Office, Columbus, Ohio, for appellant.

Randy Dupree, Jackson County Prosecuting Attorney, Jackson, Ohio, for appellee.
_____
Hess, J.

**{¶1}** Eric Dearth appeals the trial court's decision granting the state's motion to hold him without bail pending trial. Dearth argues that the trial court violated his rights under the Eighth Amendment of the United States Constitution and Article I, Section 9 of the Ohio Constitution and erred in its application of R.C. 2937.222, the statutory provision governing whether the accused shall be denied bail. Under that statute no accused person shall be denied bail unless the trial judge finds by clear and convincing evidence that: (1) the proof is evident or the presumption great that the accused committed the offense; (2) the accused poses a substantial risk of serious physical harm to any person or to the community; and (3) no release conditions will reasonably assure the safety of that person and the community. The state has the burden of proof on all three factors.

{¶2} Dearth does not contest the trial court's finding on the first factor, that the proof is evident or the presumption great that he committed the alleged offenses. While maintaining his innocence he concedes that, given that the rules governing the admissibility of evidence are inapplicable, there was sufficient hearsay evidence presented at the hearing to satisfy this factor. *See* R.C. 2937.222(A) ("The rules concerning admissibility of evidence in criminal trials do not apply * * * at the hearing.") However, he contests the second and third factors. He contends that the state failed to present clear and convincing evidence that he poses a substantial risk of serious harm to the victims or the community. He argues that since the investigation began in late August 2022 up through the date of the hearing in January 2023, the state presented no evidence that he posed any threats to the alleged victims or attempted to harm them or interfere with their cooperation in the investigation. When served with a civil sexually oriented protection order in October 2022 as to one of the alleged victims, Dearth agreed to voluntarily comply with its terms without a hearing. Dearth contends that there was insufficient evidence to establish that no release conditions would reasonably assure the safety of the victims or the community. He argues that there are obvious and commonly used conditions that could have been ordered that would reasonably assure the safety of everyone involved.

{¶3} We have reviewed the record and have determined that, in finding that (1) the proof is evident or the presumption great that Dearth committed the offenses charged; (2) that Dearth poses a substantial risk of serious physical harm to any person or to the community; and (3) that no release conditions will reasonably assure the safety of that person and the community, the trial court had sufficient evidence before it to satisfy the

clear and convincing standard. The state presented sufficient evidence by which the trial court could have formed a firm belief or conviction in support of its findings. We overrule Dearth's assignment of error and affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL HISTORY

**{¶4}** On January 23, 2023, the Jackson County grand jury indicted Eric Dearth on two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4), a third-degree felony, and R.C. 2907.05(B), a fourth-degree felony and four counts of rape in violation of R.C. 2907.02(A)(1)(b), first-degree felonies. The indictment identified two victims, ages 7 and 12 when the alleged crimes occurred in May 2021 through September 2022. When Dearth learned of the indictment on that same date, Dearth voluntarily turned himself in to law enforcement. The following day, on January 24, the state filed a motion to detain Dearth without bail pursuant to R.C. 2937.222 and a hearing was held on the motion that afternoon.

**{¶5}** At the hearing, the state presented the testimony of Sergeant Investigator Richard Kisor, Jr. who testified that he began an investigation into Dearth in late August 2022 after allegations arose that Dearth sexually molested Dearth's grandchildren's friends while the children were visiting Dearth in his home. Sgt. Kisor testified that during a forensic interview of those children, additional allegations arose that Dearth sexually molested a granddaughter and that Dearth showed pornography to the children while they were visiting his home. Dearth allegedly told the children that if they told anybody about the molestation, he would tell their parents that the children had watched pornography and were using profanity.

**{¶6}** Sgt. Kisor testified that after the interview of those children, they then interviewed two of Dearth's grandchildren and Dearth's son, J.D., who was the father of the two grandchildren being questioned. Through these interviews, additional allegations arose about the children showering naked with Dearth. J.D. also told Kisor he had witnessed two of the children naked in the hot tub with Dearth and told the children to go put on clothes.

**{¶7}** Sgt. Kisor testified that in September 2022, another allegation was made that Dearth had sexually molested another child in his residence and in a camper on his property. A forensic interview of that child occurred, during which detailed allegations of rape and oral sex were made against Dearth.

**{¶8}** Sgt. Kisor testified that he conducted a search of Dearth's residence and discovered pornography, including that involving animals, on Dearth's phone and his wife's phone, photographs of several of the children in various stages of nudity, photographs of Dearth laying naked on his couch with one of the children lying next to him with her hand on or near his penis, videos of the children showering naked either alone or with Dearth's wife, and videos showing the children using very foul language.

**{¶9}** Sgt. Kisor testified that one of the children involved in the current investigation obtained a protective order against Dearth and that several of the children have expressed fear and have struggled emotionally because of what has happened to them. Kisor also testified that 17 years earlier, in 2005, Dearth was convicted of one count of pandering obscenity involving a minor (possessing child pornography).

**{¶10}** Sgt. Kisor testified that he has an ongoing concern that Dearth will continue to have access to some of the grandchildren during the pretrial phase of the case. Two

of Dearth's grandchildren's statements changed significantly between the time they were interviewed in August 2022 and when they eventually gave forensic interviews, which he stated occurred in September 2022. Kisor answered affirmatively when he was asked about the inconsistencies, agreeing with the prosecutor's characterization that when the children were initially interviewed, they talked about inappropriate instances involving Dearth and cried. But at the subsequent forensic interview, they said they rarely go over to Dearth's house and are never left alone with him. Kisor stated that he knew the grandchildren's statements during the forensic interview were false because the video and photographic evidence obtained during the search of the Dearth residence provided proof that they were over there often and alone with Dearth frequently.

{¶11} Sgt. Kisor spoke with these two grandchildren's father, J.D. (Dearth's son) and he also made inconsistent statements. J.D. initially cooperated and stated that he had seen children naked in the hot tub with Dearth and it was very concerning to him, but then later "changed on that." J.D. also refused to allow his children to participate in a forensic interview. Kisor testified, "He refused to do so to the point to where we had to get with children services and involved Juvenile Court to bring them in for a forensic interview." Kisor testified that he spoke to J.D. after the forensic interview about his children's inconsistencies and explained that the children could be in danger and it was important to get correct statements of what happened. J.D. responded that he knew and agreed but he also told Kisor that Dearth's wife (the grandmother) still picks up the children and takes them to Dearth's house on Tuesdays and Thursdays.

{¶12} Sgt. Kisor testified that he believes that those grandchildren (J.D.'s children) would be at risk of harm if Dearth were released or out on bail.

{¶13} On cross-examination, Kisor was asked when the last time J.D.'s children were in contact with Dearth. Kisor testified that based on J.D.'s statements, those children were still allowed to see Dearth as of the date of the forensic interviews. However, Kisor conceded that nothing has occurred since the forensic interview in September 2022 that would lead him to believe Dearth has committed any crime, but added, "there are possibilities" and "there is still a chance that [Dearth] could still be doing things electronically that I don't know about."

{¶14} Sgt. Kisor knew that Dearth had retained counsel during the investigation prior to the indictment and that his defense counsel was planning for Dearth to voluntarily turn himself in if an indictment issued. Nevertheless, the Jackson Police Department staked out Dearth's residence the day the indictment issued. Kiser watched a vehicle arrive at Dearth's house, saw Dearth enter the vehicle, followed the vehicle as it drove to the Sheriff's Office, and watched Dearth exit the vehicle and head towards the Sheriff's Office. Kisor intercepted Dearth before he got inside the Sheriff's Office. Kisor agreed that Dearth's behavior was not consistent with someone who is trying to flee or elude charges.

{¶15} Kisor testified that he believed there was a possibility that Dearth may not appear if he is released on bond based on Kisor's understanding that Dearth did not initially answer the door when law enforcement tried to contact him. Kisor was also told that Dearth did not answer the door when children's services tried to contact him. Kisor also had concerns that Dearth may not surrender himself peacefully because Dearth owned guns and was facing charges that had severe punishments if convicted.

{¶16} The state argued that based upon the testimony provided by Sgt. Kisor, there continued to be children at substantial risk of serious harm. Dearth was convicted

of child pornography years ago and since then children have been allowed to visit with him and be alone with him. Additionally, even after adults learned that children had been naked in the hot tub with Dearth and the allegations by other children had surfaced, children were still placed in his care and allowed unsupervised visitation. The state asked that Dearth be detained without bail because, under the circumstances, it did not believe any set of conditions could protect those children or other likely child victims.

{¶17} Defense counsel argued that five months had passed since the forensic interviews of his grandchildren and that history showed that there are conditions that protect the children. Counsel argued that children services put an agreement in place that Dearth is to have no contact with J.D.'s children (Dearth's grandchildren). Counsel argued that children's services' investigation was closed and there has been no contact between Dearth and the grandchildren since. He argued that Dearth's wife would assist in picking up the grandchildren and taking them to athletic events, sports, and such, but that she did not take the grandchildren to Dearth's residence.

{¶18} The trial court stated that it had concerns with the fact that parents required the involvement of children's services and a safety plan from the agency to convince them not to let their children around Dearth, particularly considering the evidence presented by Kisor and the video and photographic evidence obtained during the search supporting the children's statements. The trial court was concerned that the county children services agency does not have the resources it would take to proactively protect these children under the circumstances. The trial court was very concerned that children were brought to the Dearth residence where the alleged offenses occurred. It also took into

consideration Dearth's criminal history of child pornography. The trial court stated that it would issue a written decision but that it would be granting the state's motion.

**{¶19}** In its written decision the trial court found that the state had proved by clear and convincing evidence that (1) the proof is evident and the presumption great that Dearth has committed the offenses set forth in the indictment; (2) Dearth poses a substantial risk of harm to any person or the community; and (3) no condition of bond will reasonably assure the safety of the community. The trial court attached four exhibits to its decision in support of its findings:

> Exhibit 1 – Dearth's 2005 Conviction for Pandering Obscenity involving a Minor, in violation of R.C. 2907.321, a fourth-degree felony, for which he was sentenced to a period of community control for five years.

> Exhibit 2 – An October 27, 2022 Petition for Civil Sexually Oriented Offense Protection Order under R.C. 2903.214. requested by M.T. as father of K.T., a minor, which alleges, "For more than a year, respondent [Dearth], the child's maternal grandfather has repeatedly raped K.T., Petitioner's eleven (11) year old daughter, among other children."

> Exhibit 3 – A January 6, 2023 Order of Protection, granting M.T. and K.T.'s Petition for Civil Sexually Oriented Offense Protection Order which states that on December 30, 2022, Dearth waived a hearing and the protection order was entered "by consent."

> Exhibit 4 – A November 4, 2022 sworn Complaint filed by Jackson County Job & Family Services seeking temporary custody of J.D.'s two children on the grounds that they were neglected, abused, and dependent.[1] The complaint states that on August 20, 2022, children protective services received a referral that the children were being sexually abused by Eric Dearth. In August 2022, J.D. agreed that he would not allow any direct or indirect contact between his children and his father, Eric Dearth, during the investigation. One of the children was seen for a forensic interview on October 12, 2022, where there were concerns that the child had been coached regarding what to say or not say during the interview. Following the interview J.D. admitted to law enforcement that he has continued to allow his children to be picked up by their paternal grandmother (Dearth's wife) on Tuesdays and that the children have continued to visit at the paternal grandparent's home every Thursday. Other children have completed forensic interviews and have witnessed Dearth sexually abusing both of J.D.'s children. The complaint further

---

[1] The complaint references the children's mother as "deceased."

states that a second CPS referral was made on October 14, 2022 concerning Dearth's sexual abuse of one of J.D.'s children and the neglect of both of J.D.'s children by J.D. When a children services worker visited J.D.'s home, the children opened the door but informed the worker they were home without supervision. J.D. did not immediately contact CPS concerning the October 14, 2022 referral and the complaint states, "There are concerns that [J.D.] is complacent and is not acting in a protective manner to ensure that ACV-1 and ACV-2 [J.D.'s two children] are safe and that the children are at a high risk of continued sexual abuse by having contact with Eric Dearth."

{¶20} The trial court concluded that the state presented clear and convincing evidence that the proof is evident and the presumption great that Dearth has committed the offenses set forth in the indictment.

{¶21} The trial court reviewed the remaining two factors together, after noting that R.C. 2937.222(C)(1) - (4) contain considerations that apply equally to both (1) whether Dearth poses a substantial risk of serious physical harm to any person or the community and (2) whether there are conditions of release that will reasonably assure the safety of that person or the community. The trial court found that the nature of the offenses charged were very serious, involved violence, and involved young children, ages 7 and 12, which weigh in favor of denying bond. The weight of the evidence was significant and involved videos and photographs that support the victims' statements, which weighed in favor of denying bond.

{¶22} The trial court found that the history and characteristics of Dearth also support denying him bond. Dearth's "mental state is clearly called into question" and he "appears to have an inability to conform his conduct and behaviors to the law." It also found it significant that, despite Dearth's contentions to the contrary, he has continued to be in contact with children and additional allegations of rape were made in late October 2022. And additional referrals to children services were made in mid-October 2022

involving children different from that involved in the October rape allegation. "The significance of the above-cited cases, is that the situation between the Defendant and child victims has not been without incident during the last five months. These cases indicate that there are on-going concerns including the Defendant. Given the Defendant's prior convictions [sic], Defendant's issues are long standing." The trial court cited a section from Dearth's Pre-Sentence Investigation Report from his prior 2005 child pornography conviction in which Dearth admitted to viewing child pornography on the internet for six years prior to his 2005 conviction, which led to him ordering it from Texas, and now has escalated to multiple rape charges. These "escalating behaviors" also concerned the trial court and the risk it posed to the community.

{¶23} The trial court determined that it would be unable to impose release conditions sufficient to protect these children from substantial risk of serious harm because of the nature of the offenses – children are brought to Dearth's home and the parents are not motivated to protect their children. The court expressed grave concern that the allegations here should be sufficient to motivate a parent to keep their child away from Dearth during the pendency of the criminal proceedings, but that certain of the parents did not do so without a safety plan imposed by children services. The court expressed concerns that child protection services cannot monitor Dearth's home around that clock and that a GPS or ankle monitor on Dearth would do nothing to prevent future sexual crimes, given that children here were transported to his home.

{¶24} The trial court found that the state had demonstrated each of the three factors by clear and convincing evidence and ordered that Dearth be held without bail pursuant to R.C. 2937.222.

**{¶25}** Dearth appealed.

## II. ASSIGNMENT OF ERROR

**{¶26}** Dearth presents the following assignment of error:

I.     The Trial Court violated Mr. Dearth's rights under the Eighth Amendment of the United States Constitution and Article I, Section 9 of the Ohio Constitution, and erred in its application of R.C. Sec. 2937.222 when it denied him bail under any terms or conditions.

## III. LEGAL ANALYSIS

### A. Constitutional Rights

**{¶27}** The Eighth Amendment of the United States Constitution provides:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755, 95 L.Ed.2d 697, 107 S.Ct. 2095, 2105 (1987) (upholding the constitutionality of pretrial detention). "Pretrial release not only makes it easier for an accused person to prepare a defense, it also upholds the presumption of innocence by ensuring that a person is not punished before being convicted." *DuBose v. McGuffey,* 168 Ohio St.3d 1, 2022-Ohio-8, 195 N.E.3d 951, ¶ 10, *citing Stack v. Boyle,* 342 U.S. 1, 4, 72 S.Ct. 1, 96 L.Ed. 3 (1951). Article I, Section 9 of the Ohio Constitution, which was amended by voters effective November 8, 2022, provides:

All persons shall be bailable by sufficient sureties, * * * except for a person who is charged with a felony where the proof is evident or the presumption great and where the person poses a substantial risk of serious physical harm to any person or to the community. * * * Excessive bail shall not be required; nor excessive fines imposed; nor cruel and unusual punishments inflicted. When determining the amount of bail, the court shall consider public safety, including the seriousness of the offense, and a person's

criminal record, the likelihood a person will return to court, and any other factor the general assembly may prescribe.

The general assembly shall fix by law standards to determine whether a person who is charged with a felony where the proof is evident or the presumption great poses a substantial risk of serious physical harm to any person or to the community.

The General Assembly enacted R.C. 2937.222 in 1999, which establishes procedures and the factors a trial court must consider when determining whether to deny bail to the accused.

## B. Standard of Review

{¶28} The standard of review we apply to a trial court's decision to hold the accused without bail pursuant to R.C. 2937.222 is not a settled question of law. The statutory language in R.C. 2937.222 provides no appellate standard of review. *See* R.C. 2937.222 (D)(1)(a)-(d) (repeatedly emphasizing the need for swift appellate review with words like "priority," "speedy," "expeditiously," and "promptly" but providing no standard of review which might add lubricant to the process and prevent appellate analysis from being stymied by interminable considerations of standard of review).[2] It is a question of first impression in our district. It was also recently a question of first impression considered by the First and Third Districts Courts of Appeals. *State v. Sowders*, 1st Dist. Hamilton No. C-220114, 2022-Ohio-2401, ¶ 16, 27-28 ("Neither this court nor the Supreme Court of Ohio has yet been confronted with determining what standard to employ when reviewing the trial court's findings"); *State v. Greenawalt*, 3d Dist. Marion No. 9-22-43, 2023-Ohio-50, ¶ 10 ("This is an issue of first impression for our district"). Because the

---

[2] R.C. 2937.222(D)(1)(a)-(d) provides that "* * * the court of appeals shall do all of the following: (a) Give the appeal priority on its calendar; (b) Liberally modify or dispense with formal requirements in the interest of a speedy and just resolution of the appeal; (c) Decide the appeal expeditiously; (d) Promptly enter its judgment affirming or reversing the order denying bail."

Supreme Court of Ohio has not rendered a decision on the standard of review an appellate court should apply in reviewing bail questions under R.C. 2937.222, many appellate courts are applying up to three different standards of review to a single case.

{¶29} The state of the law is well summarized by the Sixth District Court of Appeals:

> To date, Ohio courts have not reached a consensus on the appropriate standard of review for an appellate court to apply when reviewing a trial court's decision under R.C. 2937.222. This court has characterized the issue as whether there was "sufficient evidence presented by which the [trial] court could have formed a firm belief or conviction in support of its finding[s]." *State v. Brown*, 6th Dist. Erie No. E-06-025, 2006-Ohio-3377, ¶ 25. The Tenth District, however, has applied an "abuse of discretion" standard of review. *See State v. Henderson*, 10th Dist. Franklin No. 16AP-870, 2017-Ohio-2678, ¶ 5; *State v. Foster,* 10th Dist. Franklin No. 08AP-523, 2008-Ohio-3525, ¶ 6. And the Eleventh District has applied a mixed standard of review, similar to that which governs review of a trial court's ruling on a motion to suppress; specifically:
>
> > [I]n reviewing factual determinations of the trial court, an appellate court reviewing a motion to deny bail is bound to accept the trial court's findings of fact where they are supported by competent, credible evidence. Accepting these facts as true, the appellate court independently reviews the trial court's legal determinations de novo.
> >
> > *State v. Urso*, 11th Dist. Trumbull No. [2010-T-0042,] 2010-Ohio-2151, ¶ 47.
>
> Recent decisions by the Second and Eighth Districts have applied all three standards of review, finding consistent results in each case. See *Mitchell* at ¶ 24 (concluding that conflicts in standards of review did not need to be resolved, as the trial court's decision was correct under any of the three standards); *State v. Hawkins*, 8th Dist. Cuyahoga No. 109097, 2019-Ohio-5132, ¶ 47 (finding that appellant's assignment of error should be overruled "regardless of the standard of review we apply"); *State v. Jackson*, 8th Dist. Cuyahoga No. 110621, ¶ 40 (finding that, "regardless of what standard of review this court applies," the trial court erred in revoking appellant's bond).

*State v. Blackshear*, 6th Dist. Lucas No. L-21-1141, 2022-Ohio-230, ¶ 13-14.

{¶30}  Most recently in *Greenawalt*, *supra,* the Third District joined the Second and Eighth Districts' cautious approach and applied all three standards of review to the case before it. *Greenawalt* at ¶ 11 ("we conclude we need not address the conflict among our sister districts, since the trial court's determination was correct under *any* of the above articulated standards of review" (Emphasis sic.)). However, the recent First District *Sowders* case adopted the standard of review by which it reviews the record to determine whether the trial court had sufficient evidence before it to satisfy the clear and convincing standard for each of the three factors in the statute:

> We accordingly review the record to determine whether, in finding that the proof is evident or the presumption great that Sowders committed the charged offenses, that Sowders poses a substantial risk of serious physical harm to any person or to the community, and that no release conditions will reasonably assure the safety of that person and the community, the trial court had sufficient evidence before it to satisfy the clear-and-convincing standard.

*State v. Sowders*, 1st Dist. Hamilton No. C-220114, 2022-Ohio-2401, ¶ 28. In reaching its decision, the First District considered recent Supreme Court of Ohio cases involving habeas corpus actions alleging excessive bail and the de novo standard of review applied in those original actions. *See Sowders* at ¶ 17-21 (discussing *Mohamed v. Eckelberry*, 162 Ohio St.3d 583, 2020-Ohio-4585, 166 N.E.3d 1132 and *DuBose v. McGuffey*, 168 Ohio St.3d 1, 2022-Ohio-8, 195 N.E.3d 951). However, the First District distinguished those cases from appeals arising out of R.C. 2937.222 and rejected the de novo standard of review:

> Nor are we inclined to apply the de novo standard of review that *Mohamed* and *DuBose* utilized to determine whether the amount of bail imposed was unconstitutionally excessive. Unlike *Mohamed* and *DuBose*, this case is an appeal from the trial court's denial of bail under R.C. 2937.222 and is not an original action. This court may not take additional evidence and is limited

to the record before us. Moreover, this case arises out of a statute and not the Constitution.

*Sowders* at ¶ 26.

**{¶31}** The Sixth District has adopted a similarly worded standard to that of the First District and determines if there was "sufficient evidence presented by which the [trial] court could have formed a firm belief or conviction in support of its finding[s]." (Brackets sic.) *Blackshear*, 2022-Ohio-230, ¶ 13, *quoting State v. Brown*, 6th Dist. Erie No. E-06-025, 2006-Ohio-3377, ¶ 25. The definition of "clear and convincing evidence" is that evidence that will produce in the mind of the trier of facts "a firm belief or conviction" as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118, 123 (1954) ("Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases."). Therefore, the First and Sixth Districts use the same standard of review, with the First District using the terms "clear and convincing" and the Sixth District using the definition of the terms clear and convincing, i.e., "a firm belief or conviction."

**{¶32}** In *Cross v. Ledford, supra,* the Supreme Court of Ohio not only provided a definition of "clear and convincing evidence," but it also gave the standard of review a reviewing court should employ when reviewing an issue that must be established by clear and convincing proof:

> Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof.

*Id.; State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54, 60 (1990) ("Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof" *citing Ford v. Osborne*, 45 Ohio St. 1, 12 N.E. 526 (1887) paragraph two of the syllabus (a civil action involving the fraudulent conveyance of a deed)); *see also Licking & Knox Community Mental Health & Recovery Bd. v. T.B.*, 10th Dist. Franklin No. 10AP-454, 2010-Ohio-3487, ¶ 5 (recognizing that this "heightened standard of review is consistent with, inter alia, adoption, finding of civil contempt, and termination of parental rights" as well as cases involving court-ordered hospitalization of the mentally ill, and forced administration of psychotropic drugs).

**{¶33}** The state is required to prove the three elements in R.C. 2937.222(A) by clear and convincing evidence. Therefore, in accordance with the holding in *Cross*, for our standard of review we will "examine the record to determine whether the trier of fact [i.e., trial court] had sufficient evidence before it to satisfy the requisite degree of proof." *Cross v. Ledford* at 477; *State v. Schiebel* at 74. Here we review the record to determine whether, in finding that the proof is evident or the presumption great that Dearth committed the offenses charged; that Dearth poses a substantial risk of serious physical harm to any person or to the community; and that no release conditions will reasonably assure the safety of that person and the community, the trial court had sufficient evidence before it to satisfy the clear and convincing standard. In other words, we will determine whether there was sufficient evidence presented by which the trial court could have "formed a firm belief or conviction" in support of each of the three findings. *Blackshear* at ¶ 13.

## C. Pretrial Detention

{¶34} R.C. 2937.222(A) provides that on either a motion by the prosecutor or on the judge's own motion, the judge shall hold a hearing to determine whether an accused charged with certain specified offenses, including, as relevant to this appeal, a felony of the first degree, shall be denied bail. The accused has the right to be represented by counsel at the hearing, and shall be afforded the right to testify, to present witnesses, and to cross-examine any witnesses who appear. "The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." R.C. 2937.222(A). At the hearing, the state has the burden of proving that:

> 1. the proof is evident or the presumption great that the accused committed the offense with which the accused is charged,
>
> 2. the accused poses a substantial risk of serious physical harm to any person or to the community, and
>
> 3. no release conditions will reasonably assure the safety of that person and the community.

{¶35} The trial court shall not deny the accused bail unless it finds that the state established each of the three factors by clear and convincing evidence. R.C. 2937.222(B). Clear and convincing evidence is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re K.H.,* 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42, *quoting Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

**{¶36}** Under R.C. 2937.222(C), the judge, in determining whether the accused poses a substantial risk of serious physical harm to persons or the community and whether there are conditions of release that will reasonably assure the safety of persons or the community, shall consider all available information regarding the following:

> (1) The nature and circumstances of the offense charged, including whether the offense is an offense of violence or involves alcohol or a drug of abuse;
>
> (2) The weight of the evidence against the accused;
>
> (3) The history and characteristics of the accused, including, but not limited to, both of the following:
>
> > (a) The character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, and criminal history of the accused;
> >
> > (b) Whether, at the time of the current alleged offense or at the time of the arrest of the accused, the accused was on probation, parole, postrelease control, or other release pending trial, sentencing, appeal, or completion of sentence for the commission of an offense under the laws of this state, another state, or the United States or under a municipal ordinance.
>
> (4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

The denial of bail under this statute is immediately appealable under R.C. 2937.222(D)(1).

### 1. Evidence Dearth Committed the Offenses

**{¶37}** Dearth concedes this factor was met and does not challenge it. Therefore, we will move directly to the second and third factors. This factor weighs in favor of denying Dearth bail.

### 2. Evidence Dearth Poses Substantial Risk of Serious Physical Harm

{¶38} The trial court reviewed the statutory factors in R.C. 2937.222(C)(1)-(4) and determined that the state proved by clear and convincing evidence Dearth poses a substantial risk of serious physical harm to persons and the community.

{¶39} All six of the charged offenses are violent sex offenses under R.C. 2971.01(L)(1) and involved young children. The weight of the evidence was strong and included victim statements made in multiple forensic interviews as well as photographic and video evidence. Thus, the first two factors in R.C. 2937.222(C)(1) and (2), the nature of the offenses and the weight of the evidence, were strongly supported by the evidence and weigh in favor of denying bail.

{¶40} Dearth has a past criminal record and was convicted of possessing child pornography in 2005. Although Dearth emphasizes this conviction was 17 years ago, the Pre-Sentence Investigation Report from that case was quoted by the trial court and states that Dearth had possessed child pornography for 6 years prior to getting caught with it in 2005.  Multiple witnesses told law enforcement that several children were naked in a hot tub with Dearth and photographs and video from his home showed that children were recorded in various states of nudity, including one of Dearth reclining naked with a child on a couch. The current criminal charges against him involve sexual offenses against children as young as seven. Thus, there was evidence that Dearth may have a concerning mental condition. Dearth's family ties provide him access to multiple grandchildren and their young friends. And although he contends that "nothing had occurred for over five months" (i.e, from the time the investigations began in late August 2022 and the hearing in late January 2023), the record shows that much had been happening. His 11-year-old grandchild sought a sexually oriented protection order against him in late October 2022

that included new allegations (not part of the August 2022 investigation) that he had raped the child for over a year. In November 2022, two of his grandchildren (J.D.'s children) were the subject of an abuse, neglect, and dependency case by Jackson County Job and Family Services (the "agency") because it was alleged that their father, J.D., continued to allow his children to visit Dearth's residence every Thursday despite previously agreeing in August 2022 not to allow it. This same complaint alleged that on October 14, 2022, the agency received *another* referral about sexual abuse of J.D.'s son (Dearth's grandson) by Dearth.  The November 2022 filing by the agency states, "There are concerns * * * that the children are at high risk of continued sexual abuse by having contact with Eric Dearth." Thus, the third factor in R.C. 2937.222(C)(3), the history and character of the accused, including his character, mental condition, family ties, past conduct, and criminal history, were strongly supported by the evidence and weigh in favor of denying bail.

{¶41}   Based upon the nature of the charges and the weight of the evidence, the risk Dearth poses is that of sexually molesting and raping young children. This is a serious harm with devasting impact. Thus, the fourth factor in R.C. 2937.222(C)(4), the nature and seriousness of the danger posed by Dearth's release, is profound, is strongly supported by the evidence, and weighs in favor of denying bail.

{¶42}  Upon review of the evidence, we find the record contains sufficient evidence for the trial court to form a firm belief or conviction that Dearth posed a substantial risk of serious physical harm to persons and the community.

### 3. Conditions of Release

{¶43} The same factors in R.C. 2937.222(C)(1)–(4) that are considered to determine whether an accused poses a substantial risk of serious physical harm to others are also considered in determining whether there are conditions of release that will reasonably assure the safety of the community. We find the trial court's reasoning persuasive. It found that because Dearth did not leave his home to commit the alleged offenses, placing him "on house arrest with a GPS ankle monitor would be meaningless." The apparent lack of parental concern is also a problematic challenge to adequately address with a condition of release that could reasonably assure the safety of J.D.'s children and their friends. J.D. has promised on at least one occasion not to allow his children to be with Dearth, yet in November 2022 he admitted to allowing Dearth's wife to bring the children back to Death's house every Thursday.

{¶44} Dearth argues that there is no present allegation that J.D.'s children have been sexually abused; it is all innuendo and rumor. He emphasized, "They are not named in the indictment, and the JCCS complaint involving them has been dismissed with a stay-away agreement." If the complaint has been dismissed via a stay-away agreement, this agreement was not introduced at the hearing, and it has not become part of the record on appeal.

{¶45} Dearth also makes several suggestions for conditions of release that could have been ordered that he argues would reasonably assure the safety of everyone involved in the community: (1) he could be ordered not to have contact with any child or their parents, whether relative or not; (2) if children arrive at his home, he could be ordered to leave; (3) he could be ordered to report to court on a weekly or more frequent basis;

and (4) he could be ordered not to use the internet. First, we do not agree that reporting to the court on a weekly basis (or more) will address the safety concerns at issue here. Dearth allegedly sexually molested and raped children in his home – a weekly trip to the courthouse will not reasonably assure that these offenses are not committed during the remaining approximate 166 hours in the week. The remaining conditions Dearth proposes suffer one major fatal flaw: they cannot be monitored. When an accused is ordered on house arrest with an GPS ankle monitor, law enforcement is alerted to breaches via an alarm to a central monitoring system. However, here, if children are brought to Dearth's home in violation of the order, no alarm alerts authorities. If Dearth does not leave his home when his wife brings home grandchildren, no alarm alerts authorities. Even if all of Dearth's computer devices were removed from his home, if he accesses the internet via his wife's phone, no alarm alerts authorities. The problem with all of Dearth's proposals is that they require constant in-person monitoring by authorities to detect any violations. The trial court correctly assessed that Dearth's home cannot be monitored "around the clock." Therefore, Dearth's proposed conditions do not *reasonably* assure the safety of children or the community.

{¶46} Upon review of the evidence, we find the record contains sufficient evidence for the trial court to form a firm belief or conviction that no release conditions will reasonably assure the safety of persons and the community.

## IV. CONCLUSION

{¶47} The record contains sufficient evidence by which the trial court could have formed a firm belief or conviction in support of the finding that the proof is evident or the presumption great that the accused committed the offenses; the accused poses a

substantial risk of serious physical harm to any person or to the community; and no release conditions will reasonably assure the safety of that person and the community.

**{¶48}** We overrule Dearth's assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the JACKSON COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
     Michael D. Hess, Judge



### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**