**[Cite as *State v. Campbell*, 2024-Ohio-3340.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                    Court of Appeals No.  WD-24-022

      Appellee                              Trial Court No. 2024 CR 0071

v.

Langston Harvey Campbell              **DECISION AND JUDGMENT**

      Appellant                             Decided:  August 30, 2024

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Chief Assistant Prosecuting Attorney, for appellee.

Samuel E. Gold, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} In this expedited appeal, the defendant-appellant, Langston Campbell,

appeals a judgment entered by the Wood County Court of Common Pleas that denied him

bail while he awaits trial on multiple felony charges, including two counts of first-degree

kidnapping.  For the reasons that follow, we affirm the judgment of the trial court.

## I. Background

{¶ 2} On February 14, 2024, Campbell was stopped for a speeding violation by officers with the Wood County Sheriff's Department. Campbell told the officers that he was on his way home to Port Huron, Michigan from Cincinnati, having delivered a puppy to a customer of his dog-breeding business. The officers noticed Campbell's passenger, M.B. ("the victim"), sitting in the back seat of the vehicle with extensive facial injuries. Upon investigation, the officers learned that the victim and her infant son had been reported as missing in California back in January.

{¶ 3} When questioned privately, the victim reported that Campbell had held her captive since she and her son arrived at Campbell's home on December 12, 2023. She also reported that Campbell had beaten her repeatedly, causing multiple injuries, including fractured ribs and a lacerated spleen. At times, Campbell also kept the victim's son from her, forcing her to travel without him. Campbell was also alleged to have maintained control of the victim's cell phone and state identification. While Campbell was seated in the back of a police cruiser, the police observed him deleting communications from the victim's phone.

{¶ 4} On February 21, 2024, Campbell was indicted on five felony counts: kidnapping, in violation of R.C. 2905.01(A)(3) and (C)(1), a felony of the first degree; kidnapping, in violation of R.C. 2905.01(A)(6) and (C)(1), a felony of the first degree; tampering with evidence, in violation of R.C. 2912.12(A)(1) and (B), a felony of the third degree; disrupting public services, in violation of R.C. 2909.04(A)(1), a felony of

2.

the fourth degree; and possession of criminal tools, in violation of R.C. 2905.01, a felony of the fifth degree. Cambell was appointed counsel at his February 26, 2024 arraignment.

{¶ 5} The state filed a motion to deny bail under R.C. 2937.222(A). Following a hearing, the trial court granted the state's motion on February 29, 2024.

{¶ 6} Campbell was appointed separate, appellate counsel and filed an immediate appeal, pursuant to R.C. 2937.222(D)(1) ("An order of the court of common pleas denying bail pursuant to this section is a final appealable order."). Campbell asserts a single assignment of error for our review:

ASSIGNMENT OF ERROR: The trial court erred to the prejudice of Appellant when denying a pretrial bond; the court did not properly consider or weigh all factors articulated in O.R.C. 2937.222.

## II. Law and Analysis

{¶ 7} R.C. 2937.222 ("Hearing to deny bail; information to consider") provides that a defendant charged with certain serious offenses, including, as relevant to this appeal, a first degree felony, may be denied bail if the trial court holds a hearing and finds, by clear and convincing evidence, that: (1) "the proof is evident or the presumption great that the accused committed [the charged offense];" (2) "the accused poses a substantial risk of serious physical harm to any person or to the community;" and (3) "no release conditions will reasonably assure the safety of that person and the community." R.C. 2937.222(A) and (B).

3.

**{¶ 8}** In determining whether the second and third elements are met, i.e. whether the accused poses a substantial risk of serious physical harm and whether there are conditions of release that will reasonably assure the safety of that person and the community, the trial court "shall consider all available information regarding all of the following:"

(1) The nature and circumstances of the offense charged, including whether the offense is an offense of violence or involves alcohol or a drug of abuse;

(2) The weight of the evidence against the accused;

(3) The history and characteristics of the accused, including, but not limited to, both of the following:

(a) The character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, and criminal history of the accused;

(b) Whether, at the time of the current alleged offense or at the time of the arrest of the accused, the accused was on probation, parole, post-release control, or other release pending trial, sentencing, appeal, or completion of sentence for the commission of an offense under the laws of this state, another state, or the United States or under a municipal ordinance.

(4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

R.C. 2937.222(C).

{¶ 9} As indicated, an accused shall not be denied bail unless the trial court finds that the state established each of the three statutory elements by clear and convincing evidence. R.C. 2937.222(B). Clear and convincing evidence is more than "a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *State v. Marcum*, 2016-Ohio-1002, ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 10} The standard of review to be applied to a trial court's decision to hold the accused without bail under R.C. 2937.222 "is not a settled question of law." *State v. Dearth,* 2023-Ohio-968, ¶ 28 (4th Dist.) (Noting that the statute provides no appellate standard of review and the lack of consensus among appellate districts). In this district, we have consistently found that a trial court's decision to deny bail should be reviewed for a determination of whether there was "sufficient evidence presented by which the [trial] court could have formed a firm belief or conviction in support of its finding[s]." *State v. Blackshear,* 2022-Ohio-230, ¶ 13 (6th Dist.) quoting *State v. Brown,* 2006-Ohio-3377, ¶ 31 (6th Dist.); *see also*, *State v. Knowles*, 2022-Ohio-3264, ¶ 22 (6th Dist.) (Reaffirming "our originally-stated standard" to consider "only whether there was

5.

sufficient evidence presented" to the trial court); *Accord State v. Sowders,* 2022-Ohio-2401, ¶ 28 (1st Dist.) (Reviewing trial court's denial of bail by considering whether "the trial court had sufficient evidence before it to satisfy the clear-and-convincing standard.") *and State v. Death,* 2023-Ohio-968, ¶ 33 (4th Dist); *but see State v. Henderson*, 2017-Ohio-2678, ¶ 5 (10th Dist.) (Applying abuse of discretion standard); *State v. Urso*, 2010-Ohio-2151, ¶ 47 (11th Dist.) (Applying a mixed standard of review).

{¶ 11} In this case, the trial court found "by clear and convincing evidence that, 1) the presumption is great that the accused committed Counts One and Two, felonies of the first degree, with which he was charged, 2) the Defendant poses a substantial risk of serious physical harm to the alleged victim and the community, and 3) no release conditions will reasonably assure the safety of the alleged victim or the community." Entry and Order, Feb. 29, 2024.

{¶ 12} On appeal, Campbell argues that the evidence was insufficient to support any of the trial court's findings under R.C. 2937.222 (A) and (B). We address each element below:

## 1. <u>Evidence that Campbell committed the kidnapping offense(s)</u>

{¶ 13} Campbell is charged with violating two provisions of the kidnapping statute, both first degree felonies. R.C. 2905.01(A) provides that

> No person, by force, threat, or deception. . . shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: . . . (3) [t]o terrorize, or to inflict serious physical harm on the victim or another; . . . (6) [t]o hold in a condition of involuntary servitude.

6.

{¶ 14} At hearing, the arresting officer, Detective Sergeant Destinie Moore, testified that she observed the victim sitting in the back seat of Campbell's vehicle and that she had "severe facial trauma," consisting of "black eyes, a large goose egg on the left side of her jaw, [her] whole interior lip was bruised, [and] a scar that had been split open across her head." Det. Moore photographed the victim's injuries, and the pictures were admitted during the hearing.

{¶ 15} Once separated from Campbell, the victim spoke more freely to Det. Moore, who offered the following summary of their conversation:

> [The victim] was very scared, she told me that she's been held against her will since December. She said that [Campbell] held her against her will in order for her to take care of the puppies that he was breeding at his house. That he had nearly 30 puppies, and she wasn't allowed to leave, she wasn't allowed to have her cellphone, she wasn't allowed to call anyone, tell anyone where she was at. He would contain her in his bedroom by nailing the door shut when she was in there. She was often forced to sleep with the puppies. . . Her involuntary confinement extended to outside of the residence. She was threatened every time that she would leave the residence. [Cambell would tell her] ["]if you don't—if you don't comply or submit to—with what I want you to do, then . . . I'm gonna call my mom and your son will disappear, you'll never see your son again.["] 2/29/2024 Tr. at 8-9.

{¶ 16} Det. Moore also testified that, while Campbell was seated in the back of a police cruiser, he was observed to be in possession of the victim's cellphone and deleting messages from it. Campbell also possessed the victim's "identification," which authorities retrieved. When the victim's personal information was entered into a law

enforcement data base, police learned that the victim and her son had been reported missing the previous month in California.

{¶ 17} Campbell also testified at the bond hearing—against his attorney's advice and only after he was advised of his right to remain silent. Campbell insisted that the victim was "free of liberty" during their trip back to Port Huron. He also claimed that he had been in possession of the victim's identification card, at her request, ever since they had visited a nightclub two days prior.

{¶ 18} Campbell denied that he had ever "kidnapped, tied up, [or] restrained [the victim] against her will." He stated that the two of them had been in the presence of law enforcement officials on prior occasions but the victim failed to seek help, which he claimed, "[casts] reasonable doubt of her being kidnapped." Campbell said that the victim "never said she was kidnapped" during their "many * * * interactions" with police at Campbell's home.

{¶ 19} Under cross examination, Campbell disputed how many times police had responded to his home for "welfare checks." When asked how the victim received her facial injuries, Campbell asserted his Fifth Amendment right to remain silent, which the trial court sustained.

{¶ 20} On appeal, Campbell complains that the victim did not testify at the bond hearing and that Detective Moore's testimony was not corroborated. However, there is no requirement that the victim appear at a bond hearing, and R.C. 2937.222(A) specifically provides that "[t]he rules concerning admissibility of evidence in criminal

8.

trials do not apply to the presentation and consideration of information at the hearing." Further, we note that Det. Moore's testimony was unimpeached and that it was supported by photographs of the victim's facial injuries and testimonial evidence that the victim was transported to the hospital after the traffic-stop, where she was diagnosed with "two broken ribs and a fractured vertebrae." (Tr. at 6).

{¶ 21} Based on the foregoing, we find that the record contains sufficient evidence by which the trial court could have formed a firm belief or conviction in support of its first finding, i.e. that proof was evident or the presumption was great that Campbell committed the kidnapping offenses, as alleged.

### 2. **Evidence that Cambell poses a substantial risk of serious physical harm**

{¶ 22} Next, we consider the trial court's finding that Campbell "poses a substantial risk of serious physical harm to the alleged victim and the community." In doing so, we consider the factors set forth in R.C. 2937.222(C)(1)-(4).

{¶ 23} Regarding the "nature and circumstances of the offenses charged," Campbell is accused of committing two felony "offense[s] of violence," which is a factor we must consider. *See* R.C. 2937.222(C)(1). And, while we offer no opinion as to Campbell's guilt or innocence, the statute also compels us to consider the "weight of the evidence" against him, which includes detailed testimony from the arresting officer who observed the victim and interviewed her outside the presence of the accused, as well as pictures of her battered face. *See* R.C. 2937.222(C)(2).

9.

{¶ 24} Regarding the "history and characteristics of the accused," Campbell has an extensive criminal history involving crimes of violence against women. Detective Moore testified that there are "five active Protection Orders against [Campbell] from different women involving similar incidents." The protection orders were issued in "multiple states," including North Carolina and Ohio. In one of those cases, Campbell "drove to another state to pursue [a woman who] was coming out of her apartment and [Campbell] held her at gunpoint in a vehicle." At the time of Campbell's arrest in the instant case, he was on probation, following a felony conviction for unlawful restraint in North Carolina. Other factors supporting the denial of bail include admissions by Campbell that he is "not employed" and has no community ties to Northwest Ohio. *See* R.C. 2937.222(C)(3)(a) and (b).

{¶ 25} Campbell's prior history of committing similar offenses against women is also relevant to "the nature and seriousness of the danger to any person or the community that would be posed by [Campbell's] release" under R.C. 2937.222(C)(4). At the hearing, Officer Moore testified that some of victims identified in the protection orders "contacted our office and have specifically asked to speak to us about this case [to report] similar incidents" perpetrated by Campbell.

{¶ 26} On appeal, Campbell argues that the trial court "erred when considering Appellant's prior criminal history as a component of the analysis of substantial harm." To the contrary, R.C. 2937.222(C)(3)(a) specifies that, when "determining whether the

accused . . . poses a substantial risk of serious physical harm . . . [the trial court] shall consider . . . [the] criminal history of the accused."

{¶ 27} Campbell also insists that he poses no threat to the victim because she "is no longer in the state of Michigan, or anywhere near [him]." The record evidence suggests otherwise. Indeed, at the bond hearing, Det. Moore testified that "since [Campbell has] been in jail, he [has] been asking multiple people to reach out to the victim, to send her messages that . . . he loves her and he's not mad at her."

{¶ 28} We find that the record contains sufficient evidence and information by which the trial court could have formed a firm belief or conviction that Campbell poses a substantial risk of serious physical harm to the victim and the community. *Blackshear* at ¶ 13; *see also* R.C. 2937.222(C).

### 3. Evidence regarding conditions of release

{¶ 29} Lastly, we consider the evidence regarding the issue of whether there are conditions of release that could be imposed that would reasonably assure the safety of the victim and the community. Here, the trial court found that "[n]o release conditions will reasonably assure the safety of the alleged victim or the community."

{¶ 30} The same factors that are used to determine whether Campbell poses a substantial risk of serious physical harm are also used to evaluate the conditions of release. R.C. 2937.222(C). Thus, the fact that Campbell is accused of an offense of violence, his criminal history, lack of community ties to Northwest Ohio, the fact that he was on probation at the time of the offenses and the weight of the evidence produced by

11.

the state are all relevant to the trial court's determination that there are no conditions of release that can be imposed to protect the victim and the community. This is especially true here, where Campbell is accused of engaging surrogates, from his jail cell, to contact and influence the victim.

{¶ 31} We find that the record contains sufficient evidence by which the trial court could have formed a firm belief or conviction that no release conditions would reasonably assure the safety of the victim or the community. *Blackshear* at ¶ 13. We add that the record, subsequent to the trial court's February 29, 2024 bond hearing, overwhelmingly supports the trial court's decision. That is, Campbell is alleged to have violated three separate orders, dated April 4, 12, and July 2, 2024, which prohibited him from having any contact with the victim, including specifically by way of the jail house phone or internet, or by using others to act on his behalf. On July 11, 2024, Campbell was indicted of intimidation, under R.C. 2921.04(B)(1) and (D) ("Intimidation of an Attorney, Victim or Witness in a Criminal Case"), a felony of the third degree. (Wood County C.C.P. case No. 24-CR-266). The state's motion to join the two cases, pursuant to Crim.R. 13, is pending in the trial court.

### III. Conclusion

{¶ 32} The record contains sufficient evidence by which the trial court could have formed a firm belief or conviction in support of the finding that the proof is evident or the presumption great that Campbell committed the first degree offenses charged in this case; that he poses a substantial risk of serious physical harm to the victim or community; and

12.

that no release conditions will reasonably assure the safety of that person and the community. Accordingly, we overrule Campbell's assignment of error and affirm the trial court's decision to deny bail.

Judgment affirmed.

Christine E. Mayle, J.

Myron C. Duhart, J.

Charles E. Sulek, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.